332 F.2d 269
 Jerome LIEBERTHAL, Plaintiff-Appellant,
v.
NORTH COUNTRY LANES, INC., Sports Arenas, Inc. and Robert Sidel, Defendants-Appellees,
Jack E. Gellman, Bowlers Management, Inc., Plattsburgh Lanes, Inc. and Consolidated Bowling Corp., Defendants.
 No. 359.
 Docket 28652.
 United States Court of Appeals Second Circuit.
 Argued March 16, 1964.
 Decided May 15, 1964.
 
 Seymour S. Epstein of Sulzberger & Sulzberger, New York City, for plaintiff-appellant.
 Martin L. Fried, of Tenzer, Greenblatt, Fallon & Kaplan, New York City (Bernard H. Goldstein, New York City, on the brief), for defendants-appellees.
 Before FRIENDLY, HAYS and MARSHALL, Circuit Judges.
 HAYS, Circuit Judge.
 
 
 1
 Lieberthal appeals from a judgment of the District Court dismissing his amended complaint, which sought treble damages under the Sherman Anti-Trust Act, 15 U.S.C. §§ 1, 2, 15 (1958). The District Court held that the amended complaint failed to state a claim upon which relief could be granted, Fed.R.Civ.P. 12 (b) (6), because (1) the averments of the complaint were insufficient to show any restraint of interstate, as opposed to intrastate, commerce, and (2) Lieberthal was not an aggrieved party having standing to maintain a private antitrust action. As we hold that the complaint does not sufficiently allege a restraint of interstate commerce, we express no opinion regarding the second ground advanced by the District Court as a basis for its decision.
 
 
 2
 Defendants North Country Lanes, Inc., Sports Arenas, Inc. and Robert Sidel are, respectively, the local operating subsidiary, the national management corporation, and a principal officer of a national bowling alley chain [Sports Arenas group]. Defendants Plattsburgh Lanes, Inc., Bowlers Management, Inc., Consolidated Bowling Corp., and Jack E. Gellman are corresponding links in a competing chain [Consolidated Bowling group]. The amended complaint alleges that prior to March, 1959, the Sports Arenas group entered into a written agreement with Lieberthal for a twenty-one year lease of a site and a building, which Lieberthal agreed to construct, to house their bowling alleys in Plattsburgh, New York. On March 30, 1959, North Country Lanes, Inc. served on Lieberthal a notice of termination of the lease, which gave as the reason for the termination Lieberthal's failure to complete the required building by March 1, 1959. The notice of termination is alleged to have been given pursuant to a conspiracy among all of the defendants that North Country Lanes, Inc. would terminate its lease and the Consolidated Bowling group would indemnify North Country Lanes, Inc. for any loss, up to fifty thousand dollars, that it might sustain as a result. The object of this conspiracy was alleged to be to prevent the opening of a bowling alley which would compete with the alley operated by Plattsburgh Lanes, Inc. Lieberthal claims that this conspiracy violates the Sherman Anti-Trust Act.
 
 
 3
 To establish a violation of either Section 1 or Section 2 of the Sherman Anti-Trust Act Lieberthal was required to allege facts showing that the conspiracy had an impact on interstate commerce either because the acts complained of occurred in interstate commerce or because those acts, though occurring wholly on the local level, substantially affected interstate commerce. See Las Vegas Merchant Plumbers Ass'n v. United States, 210 F.2d 732, 739, n. 3 (9th Cir.), cert. denied, 348 U.S. 817, 75 S.Ct. 29, 99 L.Ed. 645 (1954).
 
 
 4
 The amended complaint alleges that the Plattsburgh area draws bowling alley trade from Vermont and Canada and contains additional averments, as summarized by the district judge, that:
 
 
 5
 "a. the building leased by plaintiff to North Country had been erected, the equipment had not yet been installed, and the lease included a percentage of the returns to be received from the bowling business and from the sale of items of merchandise (presumably food and beverages principally);
 
 
 6
 "b. bowling alleys in Vermont and Canada compete with those in the Plattsburgh area;
 
 
 7
 "c. North Country actively solicited the patronage of bowling leagues in Vermont and Canada;
 
 
 8
 "d. North Country advertised in Canadian and Vermont newspapers, soliciting customers in Canada and Vermont to come to Plattsburgh to bowl and `used radio and television media' (it is not stated where) also to solicit such customers; "e. North Country and the other defendant operators of bowling alleys brought, or intended to bring, into Plattsburgh bowling alley equipment which moved in (or would move) in interstate commerce from outside New York;
 
 
 9
 "f. the equipment `scheduled to be brought into Plattsburgh' in interstate commerce was substantial and included `kitchen and service equipment';
 
 
 10
 "g. the `equipment, supplies and appurtenances being brought to Plattsburgh were items of interstate commerce for delivery to the ultimate consumer' (which seems strange, considering the nature of a bowling business);
 
 
 11
 "h. the equipment for the 32 alleys in the building of plaintiff, which was to be in interstate commerce, did not arrive;
 
 
 12
 "i. the merchandise to be sold by North Country in the premises, which was to be in interstate commerce, did not arrive;
 
 
 13
 "j. competition with bowling alleys in Canada and Vermont was lessened;
 
 
 14
 "k. the flow of bowling alley equipment in interstate commerce was restrained; and
 
 
 15
 "l. defendants acted `for the express purpose' of stopping the interstate flow of `bowling alley equipment and material' into Plattsburgh." 221 F.Supp. at 686-87.
 
 
 16
 The District Judge held that, even assuming the truth of these allegations, as he was required to do in passing on the motion to dismiss, the plaintiff did not sufficiently allege a restraint of interstate commerce. We agree.
 
 
 17
 The operation of bowling alleys, without more, must be held to be a wholly intrastate activity.
 
 
 18
 A business of which the ultimate object is the operation of intrastate activities, such as local sporting or theatrical exhibits, may make such a substantial utilization of the channels of interstate trade and commerce that the business itself assumes an interstate character. United States v. International Boxing Club, 348 U.S. 236, 241, 75 S.Ct. 259, 99 L.Ed. 290 (1955) (25% of income derived from interstate operations); United States v. Shubert, 348 U.S. 222, 225, 75 S.Ct. 277, 99 L.Ed. 279 (1955) (continuous interstate transportation of personnel, property, communications, and payments); cf. Aeolian v. Fischer, 40 F.2d 189 (2d Cir. 1930) (organ installation an integral part of interstate contract of sale). It has frequently been held, however, that the incidental flow of supplies in interstate commerce, Page v. Work, 290 F.2d 323, 332 (9th Cir.). cert, denied, 368 U.S. 875, 82 S.Ct. 121, 7 L.Ed.2d 76 (1961) (publishing legal notices); Elizabeth Hospital, Inc. v. Richardson, 269 F.2d 167, 170 (8th Cir.), cert. denied, 361 U.S. 884, 80 S.Ct. 155, 4 L.Ed.2d 120 (1959) (hospitals); Lawson v. Woodmere, Inc., 217 F.2d 148, 149 (4th Cir. 1954) (cemetery vaults), the interstate travel of customers of the local enterprise, United States v. Yellow Cab Co., 332 U.S. 218, 230-32, 67 S.Ct. 1560, 91 L.Ed. 2010 (1947) (taxicab service to and from railroad stations); Elizabeth Hospital, Inc. v. Richardson, supra at 170-71 of 269 F.2d, the solicitation of business in other states for the local enterprise, Page v. Work, supra at 329 of 290 F.2d, the utilization of interstate communications media, Martin v. National League Baseball Club, 174 F.2d 917 (2d Cir. 1949) (interstate broadcast of baseball games), or a location in an area of interstate activity, Hotel Phillips, Inc. v. Journeymen Barbers, etc., Union, 195 F.Supp. 664, 666 (W.D.Mo.1961), aff'd per curiam, 301 F.2d 443 (8th Cir. 1962) (barbershops in Greater Kansas City Metropolitan Area), do not in themselves suffice to transform an essentially intrastate activity into an interstate enterprise.
 
 
 19
 "The controlling consideration * * * [is] a very practical one — the degree of interstate activity in the particular business under review." United States v. International Boxing Club, supra at 243 of 348 U.S., at 262 of 75 S.Ct. Lieberthal's complaint alleges that the influx of equipment necessary to outfit the bowling alleys would be substantial. But the initial outfitting would have been a "oneshot" affair, as the District Judge observed, and could not be held to convert the bowling lanes into an interstate enterprise. The allegations in the complaint do not indicate that the interstate movement of customers and supplies to North Country Lanes or the interstate advertising by North Country Lanes involved or would have involved a significant degree of interstate activity. Under the above cited authorities, such allegations are insufficient to state a claim for relief under the Sherman Act. See Martin v. National League Baseball Club, supra at 918 of 174 F.2d ("the bare allegation in a complaint that the defendants made contracts with broadcasting and television companies will not support the jurisdiction of the court").
 
 
 20
 It may be that defendants, as owners of national bowling alley chains, are interstate businesses. But "the test of jurisdiction is not that the acts complained of affect a business engaged in interstate commerce, but that the conduct complained of affects the interstate commerce of such business." Page v. Work, supra at 330 of 290 F.2d. Accord, United States v. Yellow Cab Co., supra (carriage by defendant of passengers from one train station to another is in interstate commerce but other taxi transportation to and from stations is intrastate commerce). Lieberthal does not allege any restraint of the national activities in which defendants are engaged; he complains only of an agreement affecting their intrastate operations.
 
 
 21
 We hold that the complaint does not establish a Sherman Anti-Trust Act violation based on acts occurring in interstate commerce.
 
 
 22
 We next consider whether the complaint can be sustained as stating a claim for relief based on local acts having a substantial effect on interstate commerce.
 
 
 23
 As Lieberthal points out, the Sherman Act condemns wholly local business restraints that affect interstate commerce as well as restraints in interstate commerce. See United States v. Employing Plasterers' Ass'n, 347 U.S. 186, 189, 74 S.Ct. 452, 98 L.Ed. 618 (1954); United States v. New Wrinkle, Inc., 342 U.S. 371, 377, 72 S.Ct. 350, 96 L.Ed. 417 (1952); United States v. Women's Sportswear Mfg. Ass'n, 336 U.S. 460, 464, 69 S.Ct. 714, 93 L.Ed. 805 (1949). But the effect of the local restraints on interstate commerce must be "direct and substantial, and not merely inconsequential, remote or fortuitous." Page v. Work, supra at 332 of 290 F.2d. See also United Leather Workers Int'l Union v. Herkert & Meisel Trunk Co., 265 U.S. 457, 471, 44 S.Ct. 623, 68 L.Ed. 1104 (1924); Las Vegas Merchant Plumbers Ass'n v. United States, 210 F.2d 732, 739-40 n. 3 (9th Cir. 1954).
 
 
 24
 The only restraint on interstate commerce alleged in the complaint is:
 
 
 25
 "That the acts on the part of the defendants were done for the express purpose of stopping the flow of bowling alley equipment and material from outside New York to Plattsburgh, New York in interstate commerce."
 
 
 26
 There is nothing to indicate the amount of commerce affected or that the alleged restraint affects any bowling alley equipment other than the equipment that would have gone into the building to be leased by Lieberthal. This is a far cry from the substantial effects on interstate commerce involved in United States v. Employing Plasterers, supra (agreement among 60% of contractors and union members engaged in plastering contracting business in Chicago to suppress competition in all of such business, which required a continuous flow of plastering materials in interstate commerce); United States v. New Wrinkle, Inc., supra (agreement to fix prices in substantially all of wrinkle finish industry); United States v. Women's Sportswear Ass'n, supra (agreement to control prices affecting a substantial portion of women's sportswear manufactured in Boston).
 
 
 27
 We hold that the complaint does not establish a violation of the Sherman Anti-Trust Act through local acts having a substantial effect on interstate commerce.
 
 
 28
 We therefore affirm the judgment below dismissing the complaint.