A. CHERNEY DISPOSAL CO. and O. Z. Miller, Ltd., Plaintiffs-Appellants,

v.

CHICAGO & SUBURBAN REFUSE DISPOSAL ASSOCIATION et al., Defendants-Appellees.

No. 72-1303.

United States Court of Appeals, Seventh Circuit.

Argued April 11, 1973.

Decided June 28, 1973.

Rehearing Denied Aug. 9, 1973.

Certiorari Denied Jan. 7, 1974. See 94 S.Ct. 870.

---

752

Jerrold E. Salzman, Chicago, Ill., for plaintiffs-appellants.

Glenn W. McGee, Peer Pedersen, W. Donald McSweeney, Chicago, Ill., for defendants-appellees.

Before SWYGERT, Chief Judge, and KILEY and BARNES,* Circuit Judges.

BARNES, Circuit Judge:

This is an appeal in a private antitrust action from a judgment of dismissal granted and entered after defendant's motion for summary judgment was treated as a motion to dismiss for lack of jurisdiction. We reverse and remand for further proceedings.

## I. THE NATURE OF THE PROCEEDINGS IN THE DISTRICT COURT.

We here adopt from the "Judgment Order and Memorandum Opinion" of the District Court, its statement of the cause, proceedings and pleadings leading up to the dismissal.[1]

---

* The Honorable Stanley N. Barnes of the Ninth Circuit, sitting by designation.

1. The complaint charges violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2. Before the court is defendants' motion for summary judgment on all claims under Rule 56 of the Federal Rules of Civil Procedure *or* in the alternative for summary judgment on plaintiffs' claims with respect to the private scavenger business.

As can be seen, the District Court took a position in the last paragraph of its order contrary to that taken by defendants during pre-trial motions.[2] Its

Plaintiffs are two small Illinois corporations engaged in the private scavenger business in the metropolitan Chicago area. Defendants consist of a large trade association of private scavengers, private scavenger company members of the Association, refuse incineration companies, individual owners and officers of the member scavenger companies, and two scavenger equipment manufacturers.

The complaint alleges violations of Sections 1 and 2 of the Sherman Act. It alleges that the defendants have combined and conspired to restrain and monopolize the private scavenger business within the geographic area including Chicago, its suburbs, parts of Indiana, and Wisconsin contiguous to the Chicago metropolitan area and St. Joseph, Missouri. It is alleged that defendants have created unreasonable restraints on competitive opportunity and commercial freedom in the private scavenger business in the Chicago area by acts including price fixing, concerted refusals to deal, reciprocal dealing, collusive bidding, market allocation, boycotts, attempts to drive non-member scavengers out of business, and attempts to monopolize the private scavenger business for member scavengers only, beginning prior to 1960 and continuing to the present date. These acts are allegedly primarily accomplished through the rules and practices of the trade association and secondarily by pressuring non-Illinois scavenger equipment manufacturers to refuse to deal with plaintiffs. In addition, however, plaintiffs allege that defendants cause labor unrest among plaintiffs' employees, intimidate plaintiffs with physical harm and misrepresent facts to plaintiffs' customers.

The court is presented here with defendants' motion for summary judgment on all claims or in the alternative for summary judgment on plaintiffs' claims with respect to the private scavenger business. All defendants have joined in this motion. Defendants move for summary judgment on the grounds that this court lacks jurisdiction over the subject matter of the complaint. In the alternative defendants seek summary judgment with respect to all plaintiffs' claims which relate to the alleged conspiracy to restrain trade in and monopolize the private scavenger business in the market area, thereby reserving for trial only plaintiffs' claim that a non-Illinois equipment manufacturer, Leach Company, refused to deal or to deal on non-discriminatory terms with plaintiffs. Both sides have submitted affidavits and briefs in support of their positions.

The federal courts are courts of limited jurisdiction. The threshold question for a court's determination is whether it has jurisdiction over the cause. While in the antitrust field the result may not be different by considering an attack on the court's jurisdiction as a motion to dismiss for failure to state a claim, or as a motion for summary judgment, it is still in substance an attack on the court's jurisdiction. A challenge to the court's jurisdiction is most properly raised by a motion to dismiss.

Defendants' effort to transform what is essentially a motion to dismiss for lack of jurisdiction into a motion for summary judgment can be of no advantage to them. The only proper court order, if the motion is successful, is dismissal since the court would have no jurisdiction to make determinations on the merits of the claims presented. Perhaps the submission of affidavits, materials outside of the pleadings, led defendants' counsel to the conclusion that the motion should be properly labeled as a motion for summary judgment.

If this motion were properly a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and matters outside the pleadings were presented to the court, then the motion must be treated as a motion for summary judgment as provided in Rule 56. This would be proper because the court would have previously determined that it had jurisdiction, and the thrust of the motion to dismiss, supported by matters outside the pleadings, would go to the merits of the issues presented in the complaint. However, it is premature to look to the merits when it is jurisdiction which is being challenged.

Further, there is no bar to the consideration by the court of matters beyond the pleadings when they are presented with a motion to dismiss for lack of jurisdiction under Rule 12(b)(1). 2A Moore's Federal Practice § 1209; Pintozzi v. Scott, 436 F.2d 375 at 378 n. 3 (7th Cir. 1970). Therefore, the court takes defendants' motion for summary judgment as a motion to dismiss for lack of jurisdiction. The court now turns to the issue of jurisdiction.

2.  (a) *Transcript of Hearing on June 2, 1971.*

THE COURT: "Has there been a motion to dismiss on the ground that there is no interstate  .  .  . "

authority for treating this as a motion to dismiss—not the motion for summary judgment relied on by the defendants—was to consider this "a speaking motion"—(matters apart and beyond the pleadings—here affidavits and depositions) and cite: 2A Moore's Federal Practice, § 12.09, Pintozzi v. Scott, 436 F.2d 375 at 378, n. 3 (7th Cir. 1970).

It is true that note 3 in *Pintozzi* specifically held: "It is appropriate for the trial court to consider, in a motion to dismiss under rule 12(b)(1), matters outside the pleading— . . . [i.e.,]

> MR. McGEE: "We took that under consideration, Judge, but the allegations, I think, are sufficient to sustain or to withstand a motion to dismiss."
> (App. pp. 108–109.)
> (b) *Transcript of Hearing on October 12, 1971.*
> THE COURT: "Is there a motion to dismiss based on those grounds?" (Minimal interstate commerce).
> MR. McGEE: "No, your Honor, because as we said, the complaint contained sufficient allegations to withstand a motion to dismiss, so it would require a separate hearing on the issue of interstate commerce, I believe."
> (App. p. 129.)
> The defendants' motion was one for a summary judgment, either total or partial, and not a motion to dismiss.
> (App. p. 134, et seq.)

3. "In any case, disputed issues of facts should not be resolved by affidavits on a speaking motion any more than on a motion for summary judgment: affidavits could be used to show that no genuine issue of fact existed, but not to determine such an issue, and dismissal was proper only if plaintiff had no case as a matter of law." § 1209; p. 2296. Cited as authority—(in note 18 to said § 12.09) is an opinion by Judge Kalodner of the Third Circuit in Frederick Hart & Co. v. Recordgraph, 169 F.2d 580, (3rd Cir. 1948), which supports the text above quoted.

"It is well-settled that on motions to dismiss and for summary judgment, affidavits filed in their support may be considered for the purpose of ascertaining whether an issue of fact is presented, but they cannot be used as a basis for deciding the fact issue. An affidavit cannot be treated, for purposes of the motion to dismiss, as proof contradic-

the pleadings and orders (made) in the state court, which were attached [to the] . . . motion to dismiss." But this note actually relates to that limited portion of the *Pintozzi* opinion which holds that 28 U.S.C. § 1341 bars the exercise of Federal equity power which interferes with collection of state taxes under adequate state laws.

The reference to Moore's Federal Practice Vol. 2A, § 12.09 is not specific. In that section we find certain authorities that are contrary to the rule relied upon by the district judge. We give examples in the margin.[3]

> tory to well-pleaded facts in the complaint."
> Citing cases, including Carroll v. Morrison Hotel Corp., 149 F.2d 404 (7th Cir. 1945) and Farrall v. District of Columbia Athletic Union, 80 U.S.App.D.C. 396, 153 F.2d 647 (1946), (per Prettyman, J.)
> " . . . the weight of authority generally in the federal courts . . . (and the Eighth Circuit . . .) . . . and the better reasoning conspire in the denial to a defendant of the right to impeach, by affidavits in support of a motion to dismiss for failure to state a valid claim, the essential allegations of a complaint and thereby in effect, to force the plaintiff into a summary trial . . . upon matters of fact explicitly averred in the complaint."
> United States v. Assn. of Am. R. R. (D.Neb.1945), 4 F.R.D. 510; (Delehant, D. J.).
> And in note 21, p. 2298, Professor Moore states, after expressing the general rule that lack of jurisdiction requires a reversal:
> "When the jurisdictional issue is inextricably intertwined with the merits of the case, the courts have generally held that the former should not be decided summarily, but should await trial on the merits."
> *See:* McBeath v. Inter-American Citizens for Decency Comm., 374 F.2d 359 (5th Cir. 1967), where the Court of Appeals "reversed the dismissal of an action for want of jurisdiction where the jurisdiction depended upon effect upon commerce, *an issue intertwined with the allegation of conspiracy.*"
> Moore's § 12.09, p. 2311 states:
> " . . . [q]uestions of fact on disputed proof may not be resolved without a trial"; citing Advisory Committee Note, and a Seventh Circuit case,

Appellee also relies on Rosemound Sand & Gravel Co. v. Lambert Sand & Gravel Co., 469 F.2d 416 (5th Cir. 1972). There a procedure similar to that adopted by the District Judge in this case was approved (p. 418), but on completely different facts. (1) Rosemound, the appellant, had every opportunity to present affidavits to prove interstate commerce, but after "only the barest conclusionary statements in the complaint", the "weak" answers to interrogatories "clearly show that none of defendant's products were shipped out of state or entered the flow of commerce." (2) The jurisdictional requirements of the Clayton Act and the Robinson-Patman Act were involved, not the Sherman Act Sec. 1 requirements (as here).

"This failure of any party to have any interstate business disposes of the Clayton Act and Robinson-Patman claims (citing cases). While these interstate activities could be found to violate the Sherman Act if they had a direct and substantial effect on interstate commerce (citing Fifth and Ninth Circuit cases), the evidence introduced below established no such connection," (id. at 418–419); and no "nexus with interstate commerce," (id. n. 1).

Butcher v. United Elec. Coal Cos., 174 F.2d 1003 (1949), quoting from p. 1006. A recent Ninth Circuit case involving a summary judgment stated:

"In considering the propriety of the summary judgment herein, we, of course, must view the evidence most favorable to the appellant."

This was stated as such well-known law as not to require the citation of authority. Zephyr Cove Lodge, Inc., a corporation, v. The First National Bank of Nevada, etc., 478 F.2d 1121, p. 1124 decided April 27, 1973). The dissenting opinion cited cases for the same principle.

"... all reasonable intendments touching upon the existence of a genuine issue of material fact must be indulged against the moving party. United States v. Diebold, Inc., 369 U.S. 654 [82 S.Ct. 993, 8 L.Ed.2d 176] (1962);

## II. DID DISPUTED QUESTIONS OF FACT EXIST BEFORE THE DISTRICT COURT?

Plaintiffs' complaint alleges, as the district judge correctly pointed out, three grounds for jurisdiction:

1. Defendants' interference with interstate commerce in scavenger packer equipment for plaintiffs' trucks.

2. Threatening boycotts of retail grocery chains operating in interstate commerce to prevent employment of plaintiffs.

3. Defendants' scavenger business includes substantial transportation and sales across state lines.

If any one of these grounds is substantially disputed, the plaintiffs are entitled to have a trier of fact determine the issues.

In summary, the district court's order held (1) the first allegation was "merely *incidental* to plaintiffs' *local* business"; (2) that the second "did not affect interstate commerce in the business," and "had no effect, except the most metaphysical, upon the interstate business of the third party grocery chains"; and (3) that the admitted transportation across state lines was "de minimis" in its effect upon interstate commerce.

Griffeth v. Utah Power & Light Co., 226 F.2d 661 (9th Cir. 1955). This traditional and necessarily rigid requirement stems from recognition that summary judgment is an extremely drastic remedy. 3 Barron & Holtzoff, Federal Practice and Procedure § 1231 (Wright ed.), quoted in Hoffman v. Babbitt Bros. Trading Co., 203 F.2d 636, 637 n. 1 (9th Cir. 1953). Accordingly, summary judgment should be rendered only 'if the pleadings, depositions, answers to [the] interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Fed.R.Civ.P. 56 (c). *See also* Consolidated Electric Co. v. United States, 355 F.2d 437 (9th Cir. 1966)."

II (1) In support of the court's ruling as to the plaintiffs' first ground (garbage compacting truck equipment), the District Court relied upon Sun Valley Disposal Co. v. Silver State Disposal Co., 420 F.2d 341, 343 (9th Cir. 1969); Lieberthal v. North Country Lanes, Inc., 332 F.2d 269 (2d Cir. 1964); Marks Food Corp. v. Barbara Ann Baking Co., 162 F.Supp. 300 (S.D.Cal.1958), rev'd on other grounds, 274 F.2d 934 (9th Cir. 1960); and Page v. Work, 290 F.2d 323 (9th Cir. 1961), cert. denied, 368 U.S. 875, 82 S.Ct. 121, 7 L.Ed.2d 76 (1961).

There is no question but that the installation of equipment in one bowling alley in Plattsburg, New York as in *Lieberthal, supra,* might well be held to have no possible substantial effect on interstate commerce. As Judge Hays says at 271 of 332 F.2d:

> "The controlling consideration . . . is a very practical one—the degree of interstate activity in the particular business under review," citing United States v. International Boxing Club, 348 U.S. 236, 243, 75 S.Ct. 259, 99 L.Ed. 290.

The same could be said of any "purely local restraint applied at a local level to a product which never enters into the flow of interstate commerce." Page v. Work, 290 F.2d 323, 331—(9th Cir. 1961, where legal advertising was involved).

In *Lieberthal, supra,* the judge relied on *uncontested* allegations of facts as alleged in the complaint, and assumed they were true. In Page v. Work, *supra,* the motion for summary judgment occurred after a trial,[4] on the stipulated limited issue of jurisdiction only.

In *Sun Valley Disposal Co., supra,* recovery was denied on two grounds, first, because it was held no federal cause of action exists where the defendant's alleged illegal acts were sanctioned by the Nevada State Legislature and the Clark County Commission; and *second,* because the acts did not involve interstate commerce for the defendants *"conducted a wholly local garbage disposal and container leasing business,"* although supplying this business from out of state. "This fact alone, does not turn what was really a local activity into an interstate one." Thus this case, standing alone on its facts, constitutes valid authority for the general rule that authorizes the District Court's action denying the first ground urged by appellant for antitrust jurisdiction.

Appellants, however, urge that *Sun Valley* is not controlling because the case of United States v. Bensinger Company, 430 F.2d 584 (8th Cir. 1970) delineates an exception to the general rule, i. e., that while the mere existence of an appreciable but minute interstate flow of supplies (as in *Sun Valley, Lieberthal, Page* and *Marks Food*) may not be sufficient to establish jurisdiction, when there is added some appreciable interstate flow to the charge that a conspiracy existed between defendants and manufacturers *located outside of the state,* to block that flow, then a direct restraint on interstate commerce exists, and is actionable under the Sherman Act, Sec. 1. (App. at 205–6; 266, 272). Klor's v. Broadway-Hale Stores, 359 U.S. 207, 210, and 211, 79 S.Ct. 705, 3 L.Ed.2d 741; Standard Oil Co. v. United States, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619.

If the instructions given by the District Court to the jury in *Bensinger* (quoted on the appeal),[5] correctly states the law, there is merit to appellants' position here opposing appellees' assertion that the plaintiffs' first ground of alleged jurisdiction is invalid. If a group

---

4. The trial consisted of evidence, affidavits, stipulated facts (30 pages), answers to requests for admissions and interrogatories, depositions, exhibits, excerpts from exhibits and oral testimony.

5. "In cases involving products moving across state lines, or in the flow of commerce, it is not material how much commerce is involved. The Sherman Act (Sec. 1) brands as unlawful any contract or combination or conspiracy."

United States v. Bensinger, *supra,* p. 588 of 430 F.2d.

boycott is alleged, *Klors, supra,*[6] and *Standard Oil Co., supra,* require reversal.

One of the most recent cases reversing a District Court's determination there was a lack of jurisdiction because of the local nature of the business involved, in which the trial court similarly relied on two of the Ninth Circuit cases herein cited by appellees,[7] states as follows:

" . . . an important distinction should be stressed—the distinction between the jurisdictional question, with which we are concerned, and the question of whether, in other respects, a substantive violation of the Sherman Act is alleged.

"The two problems are frequently confused, and understandably so. *See* P. Areeda, Antitrust Analysis 59–60 (Little, Brown & Co. 1967). Section 1 of the Act prohibits contracts, combinations, and conspiracies 'in restraint of trade or commerce among the several States.' This single cryptic phrase defines both the conduct

---

6. An agreement not to sell products to a small business man is:

"  . . . not to be tolerated merely because the victim is just one merchant whose business is so small that his destruction makes little difference to the economy." *Klors, supra,* at 213 of 359 U.S., at 710 of 79 S.Ct.

"There need be no showing of the amount of commerce involved and it is no defense that the amount was small. United States v. McKesson & Robbins, Inc., 351 U.S. 305, 76 S.Ct. 937, 100 L.Ed. 1209 (1955); Las Vegas Merchant Plumbers Ass'n. v. United States, supra [210 F.2d 732 (9th Cir.)]; United States v. Pennsylvania Refuse Removal Ass'n., *supra* [D.C., 242 F.Supp. 794]." United States v. Bensinger Company, 430 F.2d 584, 588 (8th Cir. 1970).

In United States v. McKesson & Robbins, Inc., 351 U.S. 305, 309–310, 76 S.Ct. 937, 940, 100 L.Ed. 1209 (1965) it is stated:

"It has been held too often to require elaboration now that price fixing is contrary to the policy of competition underlying the Sherman Act and that its illegality does not depend on a showing of its unreasonableness, since it is conclusively presumed to be unreasonable. It makes no difference whether the motives of the participants are good or evil; whether the price fixing is accomplished by express contract or by some more subtle means; whether the participants possess market control; *whether the amount of interstate commerce affected is large or small;* or whether the effect of the agreement is to raise or to decrease prices." (Footnotes omitted—emphasis added.)

In Las Vegas Plumbers Ass'n. v. United States, 210 F.2d 732, 748 (9th Cir. 1954), cert. denied, 348 U.S. 817, 75 S.Ct. 29, 99 L.Ed. 645 (1954), the court stated: "The test of the impact on commerce is qualitative not quantitative . . . '§ 1 of the Act brands as illegal the character of the restraint not the amount of commerce affected.' U. S. v. Socony-Vacuum Oil Co., 310 U.S. 150, 225, ft. note 59, 60 S.Ct. 811, 845, [84 L.Ed. 1129], and cases cited therein."

In an old Sixth Circuit case (Steers v. United States, 192 F. 1, 5 (1911)), it was held:

"We do not find in the Standard Oil and Tobacco cases any holding that a direct restraint of trade must affect an unreasonably great amount of commerce in order to be within the prohibition. As we read these opinions, the matter under consideration, from the standpoint of reason, was not the amount of merchandise or traffic affected by the restriction, but the character and extent of the restriction itself; and it was thought that, if such restriction reasonably pertained to lawful results, it was not of itself necessarily forbidden. These opinions contain no justification for the idea that a direct and absolute restraint, bearing no reasonable relation to lawful means of accomplishing lawful ends, can be permitted only because the volume of traffic affected is not very great.

\*  \*  \*  \*  \*

"We cannot doubt that there may be a conspiracy under the act with reference to a single shipment only, and that, in so far as the rule of insignificance may exist, it does not apply to circumstances like these. This shipment was the entire crop of these three farmers for the year. It was, to them, of large relative value. . . . "

7. Rasmussen v. American Dairy Ass'n., 472 F.2d 517, 521, fn. 9 (9th Cir. 1972) We note that this case was decided *subsequent* to the decision of the district court in this case, and, of course, comes from another circuit than the Seventh.

prohibited by the Act and the statute's jurisdictional reach. As the Court explained in Apex Hosiery Co. v. Leader, 310 U.S. 469, 494–495, 60 S.Ct. 982, 992, 84 L.Ed. 1311 (1940): '[T]he phrase "restraint of trade" which . . . had a well-understood meaning at common law, was made the means of defining the activities prohibited. The addition of the words, "or commerce among the several states" was not an additional kind of restraint to be prohibited by the Sherman Act but was the means used to relate the prohibited restraint of trade to interstate commerce for constitutional purposes. . . .' The same general distinction is drawn in Mandeville Island Farms, Inc. v. American Crystal Sugar Co., 334 U.S. 219, 235, 68 S.Ct. 996, 92 L.Ed. 1328 (1948), and United States v. Women's Sportswear Manufacturers' Ass'n, 336 U.S. 460, 461–462, 69 S.Ct. 714, 93 L. Ed. 805 (1949).

"Whether a defendant's conduct constitutes a substantive Sherman Act violation is entirely a matter of congressional definition: Is the defendant's conduct the type of conduct Congress intended to prohibit? Is that conduct a 'restraint of trade' within the meaning of section 1, ' . . . The jurisdictional question, on the other hand, concerns Congress' power to reach the defendant's conduct: '[T]he restraint must "occur in or affect commerce between the states . . . for constitutional reasons." ' Klor's Inc. v. Broadway-Hale Stores, 255 F.2d 214, 224 (9th Cir. (1958) (emphasis added), reversed on other grounds, 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959), quoting and discussing Apex Hosiery Co. v. Leader, supra.

"We are concerned in this case only with the jurisdictional question. We assume, but expressly do not decide, that the conduct charged constituted a 'restraint of trade', . . . our sole inquiry is whether the probation of that conduct falls within 'the utmost extent of [Congress] . . . Constitutional power.' United States v. South-Eastern Underwriters' Ass'n, supra [322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440].

"On its face, this test is extremely broad. Congress' power over interstate commerce is plenary, encompassing not only the regulation of interstate commerce itself, but all measures 'necessary and proper' to that end, encluding the regulation of commerce that is purely intrastate."

\* \* \* \* \* \*

Just as in *Rasmussen*, where the Appellate Court assumed, but could not decide, that the conduct charged constituted a "restraint of trade," we cannot here decide that issue. Nor can we decide, on the conflicting record before us, that the alleged conduct sought to be regulated had or did not have a "substantial"—(or "appreciable") "economic effect" upon interstate commerce, [8] or "has a real and substantial relation to the national interest." [9]

The more recent judicial interpretations of Congressional authority to enact laws regulating interstate commerce go far beyond what were originally thought to be the limits of that authority. Not only can Congress enact laws which prohibit acts which "interfere with," or "affect" interstate commerce, but can "regulate the local incidents (of interstate commerce) including local activities . . . which *might* have a substantial and harmful effect upon that commerce." [Emphasis added.] [10] While this is judge made law, it is no more difficult to follow than Congressional enactments which invoke pro-

8. Wickard v. Filburn, 317 U.S. 111, 125, 63 S.Ct. 82, 87 L.Ed. 122 (1942).

9. Heart of Atlanta Motel v. United States, 379 U.S. 241, 255, 85 S.Ct. 348, 356, 13 L.Ed.2d 258 (1964) quoting Gibbons v. Ogden, 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824).

10. *Heart of Atlanta Motel, supra*, at 258 of 379 U.S., at 358 of 85 S.Ct.

scriptions against conduct which "tends" to create a monopoly.[11] "A demonstrable quantitative effect is not necessary."[12]

In essence, the test is whether "[t]he facts of the particular situation . . . determine . . . [that the] relationship to interstate commerce is too tenuous in a practical sense to warrant federal control."[13]

We hold that such a conclusion can better be determined after a thorough exploration of all evidence that either side can produce, rather than by a motion to dismiss, particularly when based on conflicting affidavits.

We suggest that neither this Court nor the District Court should "substitute its judgment for that of Congress in such a matter unless the relation of the subject to interstate commerce and its effect upon it are clearly nonexistent." Rasmussen v. American Dairy, *supra*, Note 15.[14]

II (2) As to appellants' second ground for jurisdiction (threatened boycott of retail grocery chains) the District Court cited Page v. Work, *supra* and *Sun Valley Disposal Co., supra,* and stated the test "is not whether the acts complained of affected a business which happened to be engaged in interstate commerce, but whether the acts affected the interstate part of the business."

To say that there was "no effect" upon the interstate business of the third party grocery chains, ignores the usual effect of a boycott, actual or threatened, and the charges made in paragraph 14(c) of the complaint (App. at 19). These allegations are but partially and guardedly denied in paragraph 13 of the answer of certain defendants. (App. at 50).[15]

See also references of threatened boycotts in the affidavit of W. Flood; paragraph 24, as to National Tea Co.; paragraph 25, as to A. & P. Foods; paragraph 26, as to Continental Engineers (App. at 207).

It may very well be that such charges of a threatened boycott can never be proved, but they exist in the record herein and are not effectively denied.

II (3) The existence of existing substantial transportation and sales across state lines.

In this area, the plaintiff's evidence is meager and weak. There is a sworn charge in W. (Mike) Flood's affidavit: (a) that one defendant hauled about 160 truck loads of manure in five years from Washington Park, Homewood, Illinois to the Paulowski mushroom farm in St. Johns, Indiana, (App. at 208); (b) that two other defendants hauled refuse from Lever Bros. and others from Hammond, Indiana, into Illinois, and dumped it in a land-fill at 133rd Street and Dan Ryan Expressway. (App. at 209). Some, at least, of such interstate transportation from Indiana to Illinois is admitted in the affidavit of Laurence Beck (App. at 210, et seq.), filed on behalf of defendants.

In *Bensinger, supra,* the alleged conspirators' one act—a threatened refusal to deliver a single dishwasher—satisfied the Sherman Act's Section 1, interstate commerce requirement.

III.  Conclusion.

█ Unlike the rule governing us on the usual appeal, where we are required to look with favor on all evidence supporting the decision of the trier of fact, we must here carefully and favorably consider all evidence tendered in support of the plaintiffs' asserted cause of ac-

11.  Clayton Act § 7; 15 U.S.C. § 18.

12.  *Rasmussen, supra,* at 524 of 472 F.2d.

13.  *Rasmussen, supra,* at 524.

14.  And see: United States v. Penn. Refuse Removal Ass'n., 357 F.2d 806 (3rd Cir. 1966), which was a government case involving Sec. 1 of the Sherman Act, and practices allegedly illegal per se, as here (although there existed more facts more

favorable to the government than those presently available to the plaintiff herein.)

15.  There is no absolute nor unqualified denial. For example, certain defendants deny any *"unreasonable"* restraints on competitive opportunity and commercial freedom in the private scavenger business. (Emphasis added.)"

tion, to determine if under any possible theory they have plead facts sufficient to entitle them to avoid a motion for summary judgment, or a motion to dismiss for lack of jurisdiction.

We conclude that despite the wide latitude ordinarily allowed the trial courts in controlling their calendars we should reverse. While we sympathize with a trial judge's earnest desire to keep his case-load moving in order to avoid interminable delay occasioned by failure of counsel for plaintiffs to proceed in a timely manner (and particularly in antitrust litigation), and because (as here occurred) the substitution of counsel for plaintiffs was at an awkward time—we nevertheless conclude under all facts and circumstances existing that as a matter of law the defendants' motion for summary judgment should not have been interpreted as a motion to dismiss for lack of jurisdiction, and that the motion to dismiss for lack of jurisdiction should not, on the record before us, have been granted because it required a weighing of facts disclosed in pleadings and affidavits, by the District Court.

Reversed and remanded for further proceedings in accordance with this opinion.