565 F.2d 264
 1977-2 Trade Cases 61,727
 J. P. MASCARO & SONS, INC., Appellant,
v.
WILLIAM J. O'HARA, INC., O'Hara Sanitation Co., Inc., Globe
Disposal Co., Inc., Sam's Keystone Sanitation Co., Inc.,
O'Neill and Sons, Inc., Pottstown Disposal Service, Inc.,
Santangelo Hauling Inc., The Refuse Disposal Association of
Pennsylvania, Southeastern Chapter, Inc., Moyer's Landfill,
Inc., Theodore S. A. Rubino and Samuel A. Rubino, doing
business as Knickerbocker Sanitary Landfill, Roy Quinn,
doing business as Roy Sanitation Company, William J. O'Hara,
Earl Kelly, Jr., Howard F. Moyer, Jr., Paul Lanigan, Sam
Monastero, Jr., Thomas D. O'Neill, Sr., Lesley Rinehart,
Helen Santangelo and Gerald Thorpe, Appellees.
 No. 77-1287.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 6, 1977.
Decided Nov. 9, 1977.
 
 Harold E. Kohn, Stuart H. Savett, Donald L. Weinberg, Kohn, Savett, Marion & Graf, P. C., Philadelphia, Pa., for appellant.
 Ralph W. Brenner, Carol A. Mager, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for appellees Lesley Rinehart, Jr. and Pottstown Disposal Service, Inc.
 James R. Caiola, Norristown, Pa., for appellees Santangelo Hauling, Inc. and Helen Santangelo.
 Joseph W. Lonergan, Michael D. Marino, Norristown, Pa., for appellees Sam's Keystone Sanitation Co., Inc., and Sam Monastero, Jr.
 Steven L. Friedman, Edward F. Mannino, Dilworth, Paxson, Kalish & Levy, Philadelphia, Pa., for appellees William J. O'Hara, Inc., O'Hara Sanitation Co., Inc., Globe Disposal Co., Inc., William J. O'Hara, Earl Kelly, Jr., Theodore S. A. Rubino and Samuel A. Rubino d/b/a Knickerbocker Sanitary Landfill, and The Refuse Disposal Association of Pennsylvania, Southeastern Chapter, Inc.
 Arthur L. Jenkins, Jr., William J. Cattie, III, Smith, Aker, Grossman, Hollinger & Jenkins, Norristown, Pa., for appellees O'Neill and Sons, Inc., Moyer's Landfill, Inc., Roy Quinn d/b/a Roy Sanitation Company, Paul Lanigan, Thomas D. O'Neill, Sr., and Gerald Thorpe.
 Before SEITZ, Chief Judge and GIBBONS and WEIS, Circuit Judges.
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 The parties to this Sherman Act case are in the extremely important but unglamorous enterprise of refuse collection. While the local nature of the venture is apparent, the interstate ramifications of the business are such that the plaintiff's arguments for federal court jurisdiction cannot be dismissed as rubbish. The effect on interstate commerce as alleged was substantial enough that the district court erred in refusing jurisdiction. Accordingly, we vacate its entry of summary judgment in favor of the defendants.
 
 
 2
 Plaintiff J. P. Mascaro & Sons, Inc., a refuse hauler, alleges that the defendant haulers, landfill operators, and trade association have conspired to fix prices and allocate territories so as to drive it out of business. The complaint charges violations of Sherman Act §§ 1 and 2 and asks for injunctive relief as well as treble damages. After the parties had conducted discovery, the district court granted summary judgment for the defendants on the ground that their business was a purely local operation, not in interstate commerce, nor substantially affecting interstate commerce.
 
 
 3
 Mascaro and the defendants' enterprises cover Bucks, Delaware, Montgomery and Chester Counties in suburban Philadelphia. The parties service a large number of customers, the defendant haulers collectively accounting for 16,416, including commercial and industrial establishments of all kinds, as well as private households. One of the defendant landfill operators services a federal military installation. All but one of the defendants' customers and all of the plaintiff's are located in Pennsylvania. Defendant O'Hara serves one customer in New Jersey, using a truck permanently stationed there to haul refuse to a landfill also in that state. The truck is brought to Pennsylvania two or three times a month for maintenance work but does not haul rubbish on those trips.
 
 
 4
 The haulers dump the refuse at a landfill location and pay the operator for the privilege. The amounts paid for transportation to the site and for landfill use are significant costs which affect the prices charged customers. In order to keep expenses low, haulers prefer to utilize landfills as close to the customers as is feasible.
 
 
 5
 The complaint alleges that the defendants conspired to allocate customers, fix and maintain prices, engage in predatory practices, including a foreclosure of plaintiff from the use of certain landfills, and otherwise "(to) impede, obstruct, threaten, intimidate, harass, and take action against plaintiff and certain operators in order to exclude plaintiff from the refuse removal business." As a result of these activities, the plaintiff contends that it has incurred greater expenses in conducting its business, and that competition has been reduced.
 
 
 6
 The defendants assert their businesses and Mascaro's are purely intrastate and there is no basis for jurisdiction under the Sherman Act.[1] The district court observed that subject matter jurisdiction would attach if the activity complained of occurred within the flow of interstate commerce or if acts on the state or local level substantially affected interstate commerce. The district judge defined the issue as "whether the purchase of equipment from out-of-state firms as an adjunct to conducting a local enterprise substantially affects interstate commerce."
 
 
 7
 Between 1971 and 1975, the critical time span in this case, Mascaro purchased in excess of $310,925 in equipment and supplies which were manufactured outside of Pennsylvania. During that period, Mascaro paid out-of-state insurers more than $55,000 in premiums and borrowed at least $256,389 from out-of-state lending institutions to finance equipment used in its operations. Moreover, twenty-four corporate customers paid approximately $108,000 to Mascaro from their home offices located outside Pennsylvania.
 
 
 8
 In 1974 and 1975, defendant O'Hara received approximately $74,000 from its New Jersey customer and defendant Knickerbocker received fees from the federal government for its landfill services to the military reservation. Most of the haulers purchased equipment manufactured outside of Pennsylvania. Some financed their operations by loans from out-of-state institutions and some received payment for services from corporate headquarters located beyond the state borders. Plaintiff's calculations of the amount of interstate commerce affected include these purchases and loans. The defendants contend, however, that the total amounts they spent for equipment in 1974 and 1975 (about $900,000) should not be considered because about 82 percent of the purchases were from Pennsylvania vendors. Thus, both parties advanced different figures representing the amount of interstate commerce which was affected.
 
 
 9
 The district judge did not believe that the differences were material. Relying on such cases as Sun Valley Disposal Co. v. Silver State Disposal Co., 420 F.2d 341 (9th Cir. 1969); Lieberthal v. North Country Lanes, Inc., 332 F.2d 269 (2d Cir. 1964), and Page v. Work, 290 F.2d 323 (9th Cir.), cert. denied, 368 U.S. 875, 82 S.Ct. 121, 7 L.Ed.2d 76 (1961), he concluded that purchases of trucks and equipment by the defendants from out-of-state sellers do not affect interstate commerce. However, after an appeal had been taken in this case, the Supreme Court decided Hospital Building Co. v. Trustees of Rex Hospital, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976), and its opinion casts substantial doubt on the authorities supporting the district court's reasoning.
 
 
 10
 The Sherman Act does not set out precise guidelines on jurisdiction. Although it is generally held that jurisdiction may be found if the alleged acts occurred in the "flow of commerce," sometimes termed "in commerce," or if acts in the local or state markets "affect" interstate commerce, it has been suggested that the two tests really are but one.[2] The distinction between the two apparently depends upon the perception of when the interstate journey begins and ends. In theory, a violation which occurs before the interstate trip commences or after it has halted is covered by the Act only if it "affects" commerce. But if the concept of "flow" is extended so it does not cease until the goods reach the ultimate consumer, then the "in commerce" test suffices. The Supreme Court, however, has not adopted that rationale. In Burke v. Ford, 389 U.S. 320, 88 S.Ct. 443, 19 L.Ed.2d 554 (1967), the Court stated: "(A)n activity which does not itself occur in interstate commerce comes within the scope of the Sherman Act if it substantially affects interstate commerce." 389 U.S. at 321, 88 S.Ct. at 444 (emphasis in original). Similarly, in Hospital Building Co. v. Rex Hospital, supra, the Court found jurisdiction in an "affecting commerce" situation. Though at times the two tests overlap, the distinction between them has persisted,[3] and it seems that the "flow of commerce" test under Sherman can be equated with the "in commerce" requirements of the Clayton and Robinson-Patman Acts. See Gulf Oil Corp. v. Copp Paving Co., 419 U.S. 186, 195, 95 S.Ct. 392, 42 L.Ed.2d 378 (1974); cf. United States v. American Building Maintenance Industries, 422 U.S. 271, 95 S.Ct. 2150, 45 L.Ed.2d 177 (1975). Ferguson, The Commerce Test for Jurisdiction under the Sherman Act, 12 Hous.L.Rev. 1052, 1058 (1975).
 
 
 11
 While there has been some tendency to narrow the "in commerce" concept, the trend in interpreting the "affecting commerce" test has been to broaden it. The Supreme Court has repeatedly asserted that Congress intended to confer jurisdiction under the Sherman Act to the full extent of its power under the commerce clause, Gulf Oil Corp. v. Copp Paving Co., supra, 419 U.S. at 194, 95 S.Ct. 392; United States v. Southeastern Underwriters Association, 322 U.S. 533, 558, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944). Moreover, as the concept of congressional power expanded, so has the reach of the Sherman Act. Hospital Building Co. v. Rex Hospital, supra 425 U.S. at 743, n. 2, 96 S.Ct. 1848; United States v. Underwriters Association, supra 322 U.S. at 557, 64 S.Ct. 1162; Mortensen v. First Federal Savings & Loan, supra.
 
 
 12
 In Doctors, Inc. v. Blue Cross of Greater Philadelphia, 490 F.2d 48 (3d Cir. 1973), we held that continuous large scale purchases of out-of-state supplies by a hospital were sufficient to confer jurisdiction under the Sherman Act. Since the alleged conspiracy, if effective, would have reduced the amount of supplies purchased, interstate commerce would have been affected in a very real sense. This court followed a similar approach in Evans v. S. S. Kresge Co., 544 F.2d 1184 (3d Cir. 1976), cert. denied, --- U.S. ----, 97 S.Ct. 2973, 53 L.Ed.2d 1092 (1977). Although the plaintiff grocery there bought most of its stock from a local wholesaler, substantial quantities in excess of $400,000 per year were shipped directly to it by out-of-state suppliers. This factor, together with the defendants' national pricing policy, was held to more than meet the jurisdictional threshold. 544 F.2d at 1189-90. See also Mortensen v. First Federal Savings & Loan Association, supra.
 
 
 13
 This circuit, along with the Fifth and perhaps the Seventh[4] had adopted a more expansive concept of "affecting commerce" than other courts of appeals[5] before the Supreme Court decided in Hospital Building Co. v. Rex Hospital, supra, to opt for the expansive approach. Writing for a unanimous court, Justice Marshall said, "the fact that an effect on interstate commerce might be termed 'indirect' because the conduct producing it is not 'purposely directed' toward interstate commerce does not lead to a conclusion that the conduct at issue is outside the scope of the Sherman Act." 425 U.S. at 744, 96 S.Ct. at 1852. Moreover, the Court concluded that an effect can be "substantial" even if the impact on interstate commerce falls far short of causing enterprises to fail or affecting market prices. Id. at 745, 96 S.Ct. 1848.
 
 
 14
 Though it views the jurisdiction as broad, the Supreme Court has not read the interstate commerce requirement out of the Sherman Act. In Hospital Building Co. v. Rex Hospital, the Court observed that when the restraint "substantially and adversely" affects interstate commerce, the nexus for coverage of the Act is met. It is in that light that the jurisdictional facts must be evaluated. A dispassionate view of the record here does not demonstrate that the contentions of substantiality lack validity.
 
 
 15
 Several important factors bear on the issue of substantiality. The plaintiffs allege that the defendants have conspired to restrain and monopolize trade in a large local market, an area consisting of a number of counties in the heavily populated suburban area of a large metropolis. The conspiracy is said to be aimed at driving the plaintiff out of business and limiting competition among those remaining in the field. That such a result would significantly decrease the amount of out-of-state purchases by the refuse dealers (and totally eliminate those of Mascaro) as well as increase the amount charged customers who pay from out-of-state is a matter of economic reality. The statistical data indicates that the amount of interstate activity involved is of sufficient importance to justify the congressional concern expressed in the Sherman Act. Moreover, although it appears that some of the defendants operate only small firms, the size of the conspiracy alleged and the number of its participants suggest that collectively the defendants have the power to destroy or substantially inhibit competition.
 
 
 16
 We have given consideration to the amount of interstate supplies purchased without differentiating between those secured from local vendors and the items shipped directly from out-of-state. The defendants' contention that local purchases do not affect the jurisdictional question is based on the " coming to rest" doctrine that goods which have come into possession of a local retailer for resale have left the stream of interstate commerce. The theory may have validity in determining whether the commerce clause precludes state taxation or regulation of interstate commerce, e. g., Minnesota v. Blasius,290 U.S. 1, 54 S.Ct. 34, 78 L.Ed. 131 (1933), but it has no force in determining whether the Sherman Act's commerce requirement is satisfied. St. Bernard General Hospital Inc. v. Hospital Services Association, 510 F.2d 1121 (5th Cir. 1975); Rasmussen, supra at 525. See Burke v. Ford,supra. See also Eiger, supra at 285-286. In Katzenbach v. McClung, 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964), a civil rights case, the Supreme Court said: "Nor are the cases holding that interstate commerce comes to rest in the State of destination apposite here. That line of cases has been applied with reference to state taxation or regulation, but not in the field of federal regulation." 379 U.S. at 302, 85 S.Ct. at 383.
 
 
 17
 When the issue scrutinized is the effect on interstate commerce in an antitrust context, economic reality must be the criterion. For example, to argue that commerce in interstate trucks is affected when the vehicles are shipped directly to the customer from the factory but not when they are purchased from the local dealer is economically unsound. We are not concerned with a situation in which purely local products are purchased by a local concern. Here, it appears that the only local connection with the supplies is the intervention of the vendor. That is not enough to stop the financial waves not mere ripples washing back in the stream of commerce to the out-of-state manufacturers. As has been frequently noted, Sherman Act jurisdiction must be determined using a case-by-case analysis of the relevant economic facts. Doctors, Inc. v. Blue Cross of Greater Philadelphia, supra at 51; A. Cherney Disposal Co. v. Suburban Refuse Disposal Association, 484 F.2d 751, 759 (7th Cir.), cert. denied, 414 U.S. 1131, 94 S.Ct. 870, 38 L.Ed.2d 755 (1974). On that basis we must reject defendants' contention.
 
 
 18
 Since the "affecting commerce" test has been satisfied, we need not consider the "in commerce" approach. We conclude that the district court should not have entered summary judgment for the defendants on the issue of jurisdiction. In so holding, however, we express no views on the merits of the case. The judgment of the district court will be vacated and the matter remanded for further proceedings.
 
 
 
 [1]
 The Sherman Act prohibits every contract, combination and conspiracy "in restraint of trade or commerce among the several States," 15 U.S.C. § 1, and also prohibits monopolizing "any part of the trade or commerce among the several States." 15 U.S.C. § 2. Congress never defined the phrase "trade or commerce among the several States."
 
 
 [2]
 See Eiger, The Commerce Element in Federal Antitrust Litigation, 25 Fed.B.J. 282, 285 (1965). See also United States v. Employing Plasterers Ass'n, 347 U.S. 186, 189, 74 S.Ct. 452, 98 L.Ed. 618 (1954). (flow of commerce discussed in context of motion to dismiss for failure to state a claim)
 The nomenclature used for the two tests is also apt to cause some confusion. Naturally, if a violation occurs "in commerce" it also "affects commerce."
 
 
 [3]
 Although the Rex Hospital opinion discussed at some length the "effects on interstate commerce," it concluded by stating that "since in this case the allegations fairly claim that the alleged conspiracy, to the extent it is successful, will place 'unreasonable burdens on the free and uninterrupted flow' of commerce, they are wholly adequate to state a claim." 425 U.S. at 746, 96 S.Ct. at 1853. There is, of course, a distinction between jurisdiction and stating a cause of action although often the same facts are pertinent to both. See Comment, The Confusing World of Interstate Commerce and Jurisdiction under the Sherman Act A Look at the Development and Future of the Currently Employed Jurisdictional Tests, 21 Vill.L.Rev. 721, 724 (1976). See also Mortensen v. First Federal Sav. & Loan Ass'n, 549 F.2d 884 (3d Cir. 1977); Rasmussen v. American Dairy Ass'n, 472 F.2d 517 (9th Cir.), cert. denied, 412 U.S. 950, 93 S.Ct. 3014, 37 L.Ed.2d 1003 (1973)
 
 
 [4]
 See Battle v. Liberty Nat'l Life Ins. Co., 493 F.2d 39 (5th Cir. 1974), cert. denied, 419 U.S. 1110, 95 S.Ct. 784, 42 L.Ed.2d 807 (1975); A. Cherney Disposal Co. v. Chicago & Suburban Refuse Disposal Ass'n, 484 F.2d 751 (7th Cir.), cert. denied, 414 U.S. 1131, 94 S.Ct. 870, 38 L.Ed.2d 755 (1974). See Ferguson, supra
 
 
 [5]
 E.g., Lieberthal v. North Country Lanes, Inc., supra; Spears Free Clinic & Hosp. v. Cleere, 197 F.2d 125 (10th Cir. 1952); Elizabeth Hosp., Inc. v. Richardson, 269 F.2d 167 (8th Cir.) cert. denied, 361 U.S. 884, 80 S.Ct. 155, 4 L.Ed.2d 120 (1959); Page v. Work, supra; Sun Valley Disposal Co. v. Silver State Disposal Co., supra. Contrast the latter two cases, however, with Rasmussen v. American Dairy Ass'n, 472 F.2d 517 (9th Cir. 1973)