**UNITED STATES DENTAL INSTI-TUTE et al., Plaintiffs,**

v.

**AMERICAN ASSOCIATION OF ORTHO-DONTISTS et al., Defendants.**

**No. 74 C 2924.**

United States District Court,
N. D. Illinois, E. D.

June 6, 1975.

---

568

---

Lee A. Freeman, Freeman, Freeman & Salzman, Chicago, Ill., for plaintiffs.

Thomas L. Croft, Peter W. Herzog, Jr., and John R. McFarland, Coburn, Croft, Shepherd & Herzog, St. Louis, Mo., John Edward Burke, Ross, Hardies, O'Keefe, Babcock & Parsons, Chicago, Ill., for Am. Assoc. of Orthodontists and certain individual defendants.

Owen Rall, Peter M. Sfikas, Russell M. Pelton, Jr. and Michael P. Tone, Peterson, Ross, Rall, Barber & Seidel, Chicago, Ill., for Am. Dental Assn. and certain individual defendants.

Raymond R. Cusack, Kirkland & Ellis, Chicago, Ill., for Antonio J. Venezia.

## MEMORANDUM OPINION

DECKER, District Judge.

The United States Dental Institute ("USDI"), a private, for-profit, post-secondary educational institution, and ten individual general practitioner dentists have filed this antitrust action against two professional organizations, the American Association of Orthodontists ("AAO") and the American Dental Association ("ADA"), and twenty-five individual defendants, twenty-three of whom are officials of those organizations.[1] In this three-count complaint, plaintiffs seek injunctive and declaratory relief and treble damages. Count I is a claim by USDI brought under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2. USDI alleges that it seeks to teach orthodontic skills and techniques to general practitioner dentists by means of monthly three-day seminars over a five-year period. In

---

1. Defendants Antonio J. Venezia, Jr., and William J. Greek are named as officials of alleged co-conspirator professional organizations which were not themselves named as defendants in this lawsuit.

this manner, these dentists would be able to expand their general practice within the limits of their license to practice dentistry, without interrupting their careers to return to school for two years of specialty training. Such training would further qualify them as orthodontists. USDI does not claim to be in a position to certify its students as qualified orthodontists; it claims to serve only as an educational facility teaching specialty techniques to practicing dentists. The basis of the claim in Count I is that defendants "engaged in a combination, conspiracy and continuing course of conduct designed to unreasonably restrain and destroy USDI" for the purpose of restricting the number of individuals able to practice orthodontia and thus protect the monopolistic position of certified orthodontists. Among the acts charged against defendants in Count I are: (1) actions to prevent USDI from receiving approval from the State of Illinois to operate as a private post-secondary educational facility, and once such approval had been granted, defendants acted to have it revoked by the Illinois Superintendent of Public Instruction; (2) approval of "Guidelines for Continuing Dental Education" which eliminated USDI from the list of defendant-approved educational programs; (3) refusal to publish listings of USDI courses or USDI advertisements for qualified faculty members in defendant-controlled journals; and (4) approval of an advisory opinion declaring it to be "unethical" for a dentist to participate as a teacher in a non-defendant-approved educational program.

Count II is a pendent state claim charging defendants with libel of USDI allegedly resulting from the publication of certain letters and articles.

Count III is a claim by the ten individual general practitioner dentist plaintiffs, on behalf of themselves and their purported class, who have been unable to receive training in orthodontia, who must refer their patients to recognized specialists in orthodontia, and who consequently have been unable to improve their earnings through expanded services for their patients.

Defendants have filed a plethora of motions in this case. There were a series of motions to dismiss based on lack of personal jurisdiction, improper venue, lack of subject matter jurisdiction, and failure to state a claim upon which relief can be granted. Alternatively, defendants moved to strike portions of the complaint. I will now turn to a consideration of each of these motions.

*Personal Jurisdiction*

Nine individual defendants, who were officers and officials of AAO, have moved to dismiss the complaint as to them on grounds of lack of personal jurisdiction, pursuant to F.R.Civ.P. 12(b)(2).[2] By way of personal affidavit, each of these defendants states that he is not an inhabitant of Illinois, was "found" in this lawsuit (*i. e.*, served with summons) outside of Illinois, and therefore is not properly subject to this court's jurisdiction. In determining the validity of service of process in general, and extra-territorial service of process, in particular, the Federal Rules of Civil Procedure provide:

"[Service of process upon a defendant] is . . . sufficient if the summons and complaint are served . . . in the manner prescribed by the law of the state in which the district court is held for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state." F.R.Civ.P. 4(d)(7).

---

2. These defendants' motion to dismiss was based on two additional grounds: insufficiency of process and insufficiency of service of process, pursuant to F.R.Civ.P. 12(b)(4) and (5), respectively (although defendants used the terms interchangeably, asserting only one additional ground for dismissal). These grounds, however, are merged into defendants' claim of lack of personal jurisdiction, and therefore will not be considered separately.

" . . . Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons . . . upon a party not an inhabitant of or found within the state, . . . service may . . . be made under the circumstances and in the manner prescribed in the statute or rule." F.R. Civ.P. 4(e).

In Illinois, the long-arm statute, Section 17 of the Illinois Civil Practice Act, Ill. Rev.Stat. ch. 110, § 17, provides, in pertinent part:

"(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:

(a) The transaction of any business within this State;

(b) The commission of a tortious act within this State;

. . . . . .

"(2) Service of process upon any person who is subject to the jurisdiction of the courts of this State, as provided in this Section, may be made by personally serving the summons upon the defendant outside this State, as provided in this Act, with the same force and effect as though summons had been personally served within this State."

Extra-territorial service of process under this statute is proper in treble damage actions under the federal antitrust laws. *Metropolitan Sanitary District of Greater Chicago v. General Electric Co.*, 35 F.R.D. 131 (N.D.Ill. 1964). Before applying this statute in this case, however, in considering defendants' motion to dismiss for lack of jurisdiction over the person, certain guidelines must be recognized. Such standards were recently set forth by my colleague Judge Will in *Tatham-Laird & Kudner, Inc. v. Johnny's American Inn, Inc.*, 383 F.Supp. 28, 29 (N.D.Ill.1974), where he made an analysis of § 17 as interpreted by the courts:

"It has been repeatedly stressed by the Illinois courts that the legislative intent of the Illinois long arm statute, Chap. 110, Ill.Rev.Stat., §§ 16 and 17, was the exertion of jurisdiction over non-residents to the maximum extent permitted by the due process clause. O'Hare International Bank v. Hampton, 437 F.2d 1173 (7th Cir. 1971); Rosenthal & Company v. Dodick, 365 F.Supp. 847 (N.D.Ill.1973); Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673 (1957). As set forth in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny, due process requires that there be sufficient minimum contacts with the forum state so that the exercise of jurisdiction over the non-resident be both reasonable and just according to the traditional concepts of fair play and substantial justice. Personal jurisdiction thus depends upon the existence of some voluntary act or conduct which affords the defendant the benefits and protections of the forum's law. Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961). In Illinois, this does not necessitate the defendant's actual physical presence in the state, but only that the transactions have a substantial connection with this forum. Cook Associates, Inc. v. Colonial Broach & Machine Co., 14 Ill.App.3d 965, 304 N.E.2d 27 (1973)."

To this well reasoned statement of law, I would further note only that there is no formula or rule of thumb for determining whether sufficient minimum contacts exist, other than by ascertaining what is fair and reasonable in the circumstances of the particular situation. *Hutter Northern Trust v. Door County Chamber of Commerce*, 403 F.2d 481, 484 (7th Cir. 1968).

In applying these standards to the instant case, this court must closely examine both the allegations of the complaint relevant to these defendants and the facts stated in each defendant's affidavit. The complaint charges that these individual defendants furthered the conspiracy to illegally restrain the commerce of plaintiffs by: (1) adopting the "Guidelines for Continuing Dental Education" which allegedly sought to eliminate USDI as a source of continuing education in orthodontia; and (2) allegedly acting to prevent USDI from gaining approval from the State of Illinois to operate as a private post-secondary educational facility in orthodontia and, when such approval was granted, seeking to have the approval revoked.[3]

In their individual affidavits, defendants Aldrich, Bushey, Sather and West state that they attended a meeting of the AAO Council on Orthodontic Education held in April, 1974, at the O'Hare Inn in Rosemont, Illinois, at which meeting the Council adopted the allegedly restrictive "Guidelines" cited in the complaint. Bushey, Sather and West admit in their affidavits that they were members of the Council which approved the "Guidelines". This was a significant overt act committed in Illinois which, if plaintiffs are able to establish the conspiracy as alleged, would be in furtherance of said conspiracy. These three defendants attended this meeting in their official capacities as officials of AAO and as members of the Council. At that meeting the Council officially commended the ADA Council on Dental Education which had drafted the "Guidelines", and then voted to officially approve them. Defendant Aldrich, however, stated that he attended that meeting as a "non-voting observer". Such attendance, without anything more, cannot constitute commission of a tortious act. *Magnaflux Corp. v. Foerster*, 223 F. Supp. 552, 564–65 (N.D.Ill.1963). Con-

sequently, plaintiff cannot establish jurisdiction over the person of Aldrich based on his attendance at the Rosemont, Illinois, meeting. As for the other three defendants, however, the cause of action arising from the "Guidelines" is directly traceable to this meeting in Illinois. The statutory phrase "arising from" requires only that plaintiff's claim be one which lies in the wake of the activities by which defendants are submitted to Illinois jurisdiction. *Koplin v. Thomas, Haab & Botts*, 73 Ill. App.2d 242, 253, 219 N.E.2d 646 (1st Dist. 1966). To satisfy the requirement of § 17(1)(b) that a tortious act was committed within this state, plaintiffs need not show that defendants would be liable to plaintiffs as a matter of substantive law, but only that the acts upon which the claim is based took place in Illinois and that the complaint states a cause of action. *Technical Publishing Co. v. Technology Publishing Corp.*, 339 F.Supp. 225, 227 (N.D.Ill.1972). Plaintiffs allege that defendants sought to unlawfully restrain USDI's trade in Illinois, and elsewhere, by voting to adopt the "Guidelines" in Illinois. Such restraint constitutes a tortious act within this state. The word "tortious" as used in § 17(1)(b) is not restricted to the technical definition of a tort, but also includes any act committed within the state which involves a breach of duty to another and makes the actor liable in damages. *Poindexter v. Willis*, 87 Ill. App.2d 213, 217–18, 231 N.E.2d 1 (5th Dist. 1967). *Cf. Welch Scientific Co. v. Human Engineering Institute, Inc.*, 416 F.2d 32, 34 (7th Cir. 1969), *cert. denied*, 396 U.S. 1003, 90 S.Ct. 552, 24 L.Ed.2d 494 (1970); *Southeast Guaranty Trust Company, Ltd. v. Rodman & Renshaw, Inc.*, 358 F.Supp. 1001, 1009 (N.D.Ill. 1973). Thus the activities of Bushey, Sather and West at the meeting in Rosemont, Illinois, will support jurisdiction over their persons under § 17, for purposes of this lawsuit.

---

3. Defendants have moved to strike this latter allegation from the complaint on the ground that such activities are not proscribed by the antitrust laws. See text at note 4, *infra*.

Defendants Aldrich, Jackson, Muchnic, Prezzano, Stoller and West admit to other acts which, although occurring outside the State of Illinois, plaintiffs contend satisfy the requirements of Section 17. The acts concern the allegation in the complaint that defendant acted to prevent USDI from retaining certification from the State of Illinois to operate as an educational facility in orthodontia. In May, 1974, the Board of Trustees of AAO met in Houston, Texas, and voted to have AAO participate in proceedings before the Superintendent of Public Instruction of Illinois, with the announced objective of revoking the license previously issued by the Superintendent to USDI. In October, 1974, the Board of Trustees of AAO met again, in St. Louis, Missouri, and voted to have AAO appeal the decision of the Superintendent, if he should refuse to revoke USDI's license. Defendant Aldrich attended both meetings as a member of the Board, and voted in favor of both actions. Defendants Jackson, Stoller and West attended the St. Louis meeting as members of the Board, and voted in favor of the adopted proposal. Defendant Muchnic attended the Houston meeting as a member of the Board and voted for the adopted proposal. Defendant Prezzano attended both meetings only as an ex-officio member of the Board, and did not vote on either proposal.

Defendant Prezzano's mere attendance at the meetings in a non-voting ex-officio capacity is insufficient in itself to constitute the commission of a tortious act for purposes of Section 17. *Magnaflux Corp. v. Foerster, supra.* Thus jurisdiction has not been established over his person. As for the other five defendants, however, it is clear from their own admissions that each of them actively participated in and contributed to the decision to challenge USDI's certification in the State of Illinois. Defendants assert that such good

faith action on their part does not constitute a violation of the antitrust laws and therefore was not tortious. Such an argument, however, is more appropriate in support of a motion to dismiss for failure to state a claim,[4] than in contesting the court's jurisdiction over the persons of individual defendants. For purposes of this motion, the jurisdictional allegations of plaintiffs will be taken as true. *O'Hare International Bank v. Hampton,* 437 F.2d 1173, 1176 (7th Cir. 1971). The real question presented by this motion is whether, assuming the alleged tortious act was committed, it can be said to have been committed within the State of Illinois for purposes of § 17(1)(b) so as to authorize extra-territorial service of summons on these five individual defendants.

In *Jack O'Donnell Chevrolet, Inc. v. Shankles,* 276 F.Supp. 998 (N.D.Ill. 1967), the court stated the rule that an actor need not be physically present in Illinois in order to commit a "tortious act" which would subject him to jurisdiction under the Illinois long-arm statute. The court then held that where a complaint alleged that a defendant had acted outside the state and was aware that such actions would probably cause injury to plaintiff Illinois corporation in Illinois, such complaint sufficiently alleged the commission of a tortious act in Illinois as provided in § 17(1)(b). The complaint in this case alleges that defendants conspired and acted in combination to prevent plaintiff USDI from maintaining its educational certification in Illinois. Since *Gray v. American Radiator and Standard Sanitary Corp.,* 22 Ill.2d 432, 176 N.E.2d 761 (1961), the Illinois courts have sustained jurisdiction under § 17(1)(b) where the consequences of an extra-territorial act occurred in Illinois. *Tankersley v. Albright,* 374 F.Supp. 530 (N.D.Ill.1973), *rev'd in part on other grounds,* 514 F. 2d 956 (7th Cir. 1975); *Colony Press,*

---

4. Defendants have made this very argument in their motion to strike paragraphs 20(a) and 21(a)(iii) of Count I and to the extent they are incorporated in Count III of the complaint.

*Inc. v. Fleeman,* 17 Ill.App.3d 14, 308 N.E.2d 78 (1st Dist. 1974); *Ziegler v. Hodges,* 80 Ill.App.2d 210, 224 N.E.2d 12 (2d Dist. 1967); *Koplin v. Thomas, Haab & Botts, supra. See* Royce & Mason, *Nonresident Jurisdiction in Business Litigation* (Pts. I & II), 53 Chgo. Bar Rec. 100, 162 (1971–72). In *Shankles,* the court noted that the tortious act in question was the defendant's only contact with Illinois, but concluded, "the purpose of Section 17 was to create a basis for jurisdiction over defendants having certain isolated contacts with the state, and to reach, but not transgress, the outermost limits of due process." 276 F.Supp. at 1003. I find in this case that subjecting these individuals to jurisdiction under § 17(1)(b) does not transgress those outer limits and does not violate the "traditional concepts of fair play and substantial justice."

▮ As for defendant Law, plaintiffs concede that they have failed to establish sufficient minimum contacts with Illinois to warrant extra-territorial service on him. Plaintiffs urge, however, that this court only quash service of process as to Law without dismissing him from the lawsuit. In *Occidental Petroleum Corp. v. Buttes Gas & Oil Co.,* 331 F.Supp. 92, 95–96 (C.D.Cal.1971) aff'd, 461 F.2d 1261 (9th Cir.), *cert. denied,* 409 U.S. 950, 93 S.Ct. 272, 34 L. Ed.2d 221 (1972), the court rejected a similar argument by stating:

> "Plaintiffs have cited no authority for the proposition that the court may continue the pendency of an action against an individual defendant, and allow him to be subjected to discovery in that capacity, where the court has before it an unrebutted showing that he is not within its personal jurisdiction. In these circumstances, this court considers it necessary to dismiss the complaint as to [the individual defendant] for want of jurisdiction over his person."

This court concludes that dismissal of the complaint as to defendant Law is appropriate in this case.

Accordingly, the motions of defendants Prezzano and Law to dismiss the complaint as to them are hereby granted; the motions of defendants Aldrich, Bushey, Jackson, Muchnic, Sather, Stoller and West are hereby denied. This latter holding, of course does not relieve plaintiffs from the obligation of proving jurisdictional facts at trial. This court holds only that plaintiffs have successfully met the burden of making a *prima facie* case that personal jurisdiction has been established under the Illinois long-arm statute. *Promotion Network, Inc. v. C. DaSilva (Vinhos) S.A.R.L.,* 63 F. R.D. 435, 439 (N.D.Ill.1974); *accord, O'Hare International Bank v. Hampton, supra,* at 1177 n.2.

*Venue*

▮ The AAO individual defendants have also moved to dismiss the complaint for improper venue pursuant to F.R.Civ.P. 12(b)(3). Plaintiffs concede that venue has not been established under the special antitrust venue statute, 15 U.S.C. § 15, but argue that venue is proper under subsection (b) of the general federal venue statute, 28 U.S.C. § 1391. The general venue provision is applicable to antitrust cases and was not pre-empted by the enactment of the special antitrust venue statute; the special statute only supplemented the general provision.[5] *Redmond v. Atlantic Coast Football League,* 359 F.Supp. 666, 669 (S.D.Ind.1973); *Morton Buildings of Nebraska, Inc. v. Morton Buildings, Inc.,* 333 F.Supp. 187, 193 (D.Neb.1971); *California Clippers, Inc. v. United States Soccer Football Association,* 314 F.Supp. 1057, 1062 (N.D.Cal.1970); *Albert Levine Associates v. Bertoni & Cotti,* 314 F.Supp. 169, 170 (S.D.N.Y.1970); *ABC Great States, Inc. v. Globe Ticket Company,* 304 F.2d 1052, 1054–55 (N.D.Ill. 1969); *Adams Dairy Company v. Na-*

---

5. While this court found it unnecessary to make that determination in *State of Illinois v. Harper & Row Publishers, Inc.,* 308 F. Supp. 1207, 1211 (N.D.Ill.1969), it is unavoidable and appropriate to reach that issue at this time.

*tional Dairy Products Corp.*, 293 F.Supp. 1135, 1140–42 (W.D.Mo.1968); *Philadelphia Housing Authority v. American Radiator and Standard Sanitary Corp.*, 291 F.Supp. 252, 259 (E.D.Pa.1968).

28 U.S.C. § 1391(b) provides:

"A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or *in which the claim arose*, except as otherwise provided by law."

(Emphasis added.)

In determining where the claim arose, this court will apply the "weight of the contacts" test developed for an antitrust action in *Philadelphia Housing Authority v. American Radiator and Standard Sanitary Corp., supra*, at 260–61. That test was adopted and applied in *ABC Great States, Inc. v. Globe Ticket Co.*, 310 F.Supp. 739, 742–43 (N.D.Ill.1970), where the court found that meetings of a trade association constituted significant conspiratorial acts sufficient to establish venue under § 1391(b). In the instant case, three of the defendants actively participated in the alleged conspiratorial meeting of the AAO Council on Orthodontic Education in April, 1974, in the Northern District of Illinois, at which meeting the complained of "Guidelines" were adopted. In *Philadelphia Housing Authority*, the court explained the "weight of the contacts" test by stating:

"If some . . . overt act pursuant to the conspiratorial meetings took place in a district and it was a significant and substantial element of the offense, then venue would lie in that district." 291 F.Supp. at 260–61.

Here, the alleged conspiratorial meetings in Texas and Missouri were specifically intended to produce the loss of certification consequences for plaintiff USDI, an Illinois corporation, in Illinois. The performance of those allegedly ill-motivated acts which found their target in Illinois should be enough to establish venue. *Iranian Shipping Lines, S.A. v. Moraites*, 377 F.Supp. 644, 648 (S.D.N.Y.

1974). As the court observed in *Iranian Shipping Lines*:

"In an antitrust conspiracy involving many defendants, it is hardly conceivable that all the defendants, residing or doing business in different states, will be happy with the plaintiff's choice of forum. . . . A balance of convenience must be found." 377 F.Supp. at 647.

The "weight of the contacts" test is just such a balancing scheme. Applying the test to the facts of this case, I find that the "claim arose" here, for purposes of § 1391(b), and that venue is therefore properly established in this district as to the individual defendants.

Accordingly, the motion of individual defendants to dismiss the complaint for improper venue is hereby denied.

*Pendent Personal Jurisdiction*

Defendant AAO has moved to dismiss Count II of the complaint, in which USDI seeks damages against all defendants for libel, on the ground that the court lacks personal jurisdiction over it. The President of AAO has submitted an affidavit in which he states that AAO is a Missouri corporation which was "found" in this case at its principal place of business in St. Louis, Missouri. Further, affiant states that none of AAO's officers or agents had discussions with or sent correspondence to anyone in the State of Illinois concerning any of the acts alleged in the complaint, prior to the publication and dissemination of the alleged libelous material.

Plaintiffs do not seek to establish independent personal jurisdiction in Count II under the Illinois long-arm statute. Rather they assert that jurisdiction over AAO in a common law pendent claim arises from the court's jurisdiction over that defendant which was established in Counts I and III, which are the federal statutory claims. It is true that AAO does not challenge the propriety of extra-territorial service on the federal antitrust counts in the complaint. The

question then before this court is whether or not plaintiffs may establish jurisdiction over AAO in Count II by virtue of the personal jurisdiction established over AAO in Counts I and III, under the doctrine of pendent personal jurisdiction.

Defendants rely on *Scovill Manufacturing Co. v. Dateline Electric Co., Ltd.,* 319 F.Supp. 772 (N.D.Ill. 1970), *rev'd on other grounds,* 461 F.2d 897 (7th Cir. 1972), in contending that the doctrine of pendent jurisdiction extends only to subject matter, and not to personal jurisdiction. There is, however, a split in the authorities which have considered the issue. There are other district court cases which are in accord with the view expressed in *Scovill: Ratner v. Scientific Resources Corp.,* 53 F.R.D. 325, 328 (S.D.Fla. 1971), *appeal dismissed,* 462 F.2d 616 (5th Cir. 1972); *Levin v. Great Western Sugar Co.,* 274 F.Supp. 974, 980 (D. N.J.1967), *aff'd on other grounds,* 406 F.2d 1112, 1114 n. 2 (3d Cir. 1969); *Parker v. Baltimore Paint and Chemical Corp.,* 244 F.Supp. 267, 271 (D.Colo. 1965); *Trussell v. United Underwriters, Ltd.,* 236 F.Supp. 801, 803–04 (D.Colo. 1964); *Wilensky v. Standard Beryllium Corp.,* 228 F.Supp. 703, 705–06 (D. Mass.1964); *International Ladies' Garment Workers' Union v. Shields & Co.,* 209 F.Supp. 145, 147–48 (S.D.N.Y. 1962); and *Lasch v. Antkies,* 161 F. Supp. 851, 852 (E.D.Pa.1958). The majority of cases, however, reflect the more recent trend towards adoption of the better view that pendent state law claims may be included when *in personam* jurisdiction is based upon extra-territorial service authorized for the federal claims. *Robinson v. Penn Central Company,* 484 F.2d 553 (3d Cir. 1973); *Schwartz v. Eaton,* 264 F.2d 195, 197–98 (2d Cir. 1959) (dictum); *Allen Organ Company v. North American Rockwell Corp.,* 363 F.Supp. 1117, 1122–23 (E.D. Pa.1973); *Getter v. R. G. Dickinson & Co.,* 366 F.Supp. 559, 566–67 (S.D.Iowa 1973); *In re Penn Central Securities Litigation,* 338 F.Supp. 436 (E.D.Pa. 1972); *Emerson v. Falcon Manufacturing, Inc.,* 333 F.Supp. 888 (S.D.Tex. 1971); *Puma v. Marriott,* 294 F.Supp. 1116, 1121 (D.Del.1969); *Sprayregen v. Livingston Oil Company,* 295 F.Supp. 1376, 1379 (S.D.N.Y.1968); *Kane v. Central American Mining & Oil, Inc.,* 235 F.Supp. 559, 568 (S.D.N.Y.1964); *Cooper v. North Jersey Trust Company of Ridgewood, N.J.,* 226 F.Supp. 972, 980–81 (S.D.N.Y.1964); *Townsend Corp. of America v. Davidson,* 222 F. Supp. 1, 4 (D.N.J.1963). In this case, the Federal Rules of Civil Procedure operate to confer upon the court personal jurisdiction over a defendant through a state long-arm statute for the counts of the complaint which state a federal cause of action. It is pure fiction to say that that same defendant is not before the court for the pendent count of the complaint which is based on a state cause of action. A defendant would suffer no additional burden since he is already before the court pursuant to a valid service of process as to the federal claims. In *Robinson v. Penn Central Company, supra,* the court had the following analytical perspective on this issue:

"Once the defendant is before the court, it matters little, from the point of view of procedural due process, that he has become subject to the court's ultimate judgment as a result of territorial or extra-territorial process. Looked at from this standpoint, the issue is not one of territorial in personam jurisdiction—that has already been answered by the statutes —but of subject matter jurisdiction. It is merely an aspect of the basic pendent jurisdiction problem." 484 F.2d at 555.

It makes little sense to so arbitrarly distinguish between subject matter jurisdiction and *in personam* jurisdiction for purposes of applying the "pendent jurisdiction" doctrine. As the court noted in

*Allen Organ Company v. North American Rockwell Corp., supra:*

"If the considerations of judicial economy, convenience and fairness to litigants are sufficient to support the judicial expansion of the traditionally restrictive scope of federal jurisdiction, these considerations would *a fortiori* support the judicial expansion of service of process." 363 F.Supp. at 1122.

*See* 2 Moore's Federal Practice ¶ 4.-42[1], at 1293.11 (2d ed. 1973); 4 Wright & Miller, Federal Practice and Procedure § 1125, at 528 (1969); C. A. Wright, Law of Federal Courts, § 9 at 21, and § 20 at 65 (2d ed. 1970); ALI, *Study of the Division of Jurisdiction Between State and Federal Courts,* § 1373(a) at 211 (1969); 8 ALR Fed. 533, 534–35; Mills, *Pendent Jurisdiction and Extra-territorial Service under the Federal Securities Law,* 70 Colum.L.Rev. 423 (1970). *But see* Ferguson, *Pendent Personal Jurisdiction in the Federal Courts,* 11 Vill.L.Rev. 56 (1965).

▮▮▮▮ In this case since the state and federal claims "derive from a common nucleus of operative fact", pendent jurisdiction should be exercised. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). If the claims were not so related, pendent jurisdiction would not be exercised. *Behlke v. Metalmeccanica Plast, S. P. A.,* 365 F.Supp. 272, 277 (E. D.Mich.1973). In this case, however, considerations of judicial economy, convenience and fairness lead this court to the conclusion that pendent jurisdiction should similarly be exercised over the person of defendant AAO.

Accordingly, defendant AAO's motion to be dismissed as a defendant in Count II is hereby denied.

*Subject Matter Jurisdiction*

▮▮▮▮ Defendants have moved to dismiss Counts I and III for lack of subject matter jurisdiction, pursuant to F. R.Civ.P. 12(b)(1). They contend that the alleged restraint is entirely local in nature and did not directly restrain or substantially affect interstate commerce as is required to confer jurisdiction upon a federal district court pursuant to 15 U.S.C. § 4 and 28 U.S.C. § 1337. A complaint purporting to state a claim under the Sherman Act will fail on jurisdictional grounds only if the activities alleged are "purely local" both in the sense that they are not within the flow of interstate commerce and in the sense that they have no significant effect on interstate commerce. *Mayer Paving & Asphalt Co. v. General Dynamics Corp.,* 486 F.2d 763, 767 (7th Cir. 1973), *cert. denied,* 414 U.S. 1146, 94 S.Ct. 899, 39 L.Ed.2d 102 (1974); *Doctors, Inc. v. Blue Cross of Greater Philadelphia,* 490 F.2d 48, 50 (3d Cir. 1973); *Rasmussen v. American Dairy Association,* 472 F.2d 517, 522 (9th Cir. 1972), *cert. denied,* 412 U.S. 950, 93 S.Ct. 3014, 37 L.Ed.2d 1003 (1973); ABA, *Antitrust Developments 1955–1968,* 39 (1968). In the instant case, plaintiffs contend that the complaint and supporting affidavit have alleged numerous facts which, taken together, are sufficient to establish that the alleged activities of defendants substantially affect interstate commerce, and which therefore establish jurisdiction.[6] For purposes of considering the

---

**6.** Among these factual allegations are the following:

(1) that AAO and ADA are nationwide organizations which have used the U.S. mails and held various meetings which have required interstate travel, all to effectuate their illegal purposes;

(2) that plaintiff USDI conducts courses in the states of Illinois, Washington and California over a five-year period consisting of monthly three-day sessions;

(3) that approximately 200 general practitioner dentists have enrolled in the USDI program, of which number 65% must travel across state lines to attend each of the fifty sessions in the course;

(4) that 70% of the USDI faculty must repeatedly travel across state lines to

motions to dismiss, of course, such factual allegations are taken as true.

There is a question in this Circuit as to which of two tests a court should apply in making a final determination of whether or not a given activity constitutes a restraint of interstate commerce for purposes of Sherman Act jurisdiction.[7] There is an important distinction, however, between making a finding that there was sufficient evidence to satisfy the jurisdictional requirements of the Sherman Act after a full trial, and deciding the jurisdictional issue on the basis of an incomplete record presented for purposes of a motion to dismiss. In *A. Cherney Disposal Company v. Chicago & Suburban Refuse Disposal Association,* 484 F.2d 751, 759 (7th Cir. 1973), *cert. denied,* 414 U.S. 1131, 94 S.Ct. 870, 38 L.Ed.2d 755 (1974), the court specifically held that:

> "a conclusion [as to whether or not the Sherman Act jurisdictional requirements have been met] can better be determined after a thorough exploration of all evidence that either side can produce, rather than by a motion to dismiss . . . ."

For purposes of a motion to dismiss, under *Cherney,* the district court should assume, without expressly deciding, that the conduct charged constituted a restraint of trade for jurisdictional purposes, unless it appears that "the rela-

tion of the subject to interstate commerce and its effect upon it are clearly non-existent." *Id.; accord, Gateway Associates, Inc. v. Essex-Costello, Inc.,* 380 F.Supp. 1089, 1094 (N.D.Ill.1974); *cf., Hospital Building Co. v. Trustees of Rex Hospital,* 511 F.2d 678, 686, 687 (4th Cir. 1975) (Winter, J., dissenting); *Marks Food Corporation v. Barbara Ann Baking Co.,* 274 F.2d 934, 936 (9th Cir. 1960).

After examining the allegations of plaintiffs' complaint and affidavit, as well as the memoranda of law submitted by the parties, I have concluded that plaintiffs have made a sufficient showing that the jurisdictional requirements have been met to withstand defendants' motion to dismiss. The cases relied upon by defendants do not dictate a contrary result. In *Kallen v. Nexus Corporation,* 353 F.Supp. 33 (N.D.Ill.1973), the court found that the complained of acts, the administration of an Illinois bar review course, occurred in a market located wholly within one state, and that such incidental activities as advertising, and travel into Illinois of non-Illinois lecturers would "not alter the intra-state character of the course itself." 353 F. Supp. at 36. *Accord, Michigan Bar Review Center, Inc. v. Nexus Corp.,* 1972 Trade Cas. ¶ 73,891 (N.D.Ill.1972). Other cases relied upon by defendants, *Nankin Hospital v. Michigan Hospital Service,* 361 F.Supp. 1199, 1210 (E.D.

teach the course, for which travel during 1974 USDI has reimbursed its faculty in the amount of $74,837;

(5) that general practitioner dentists enrolled in the USDI program have been regularly solicited by manufacturers for sales of orthodontic tools, equipment and materials, and that the amount of such sales, sold and shipped interstate in 1974, exceeded $575,000.

7. In *United States v. Finis D. Ernest, Inc.,* 509 F.2d 1256 (7th Cir. 1975), the court articulated the two approaches which could be used to support a finding of Sherman Act jurisdiction. The first approach requires only that the court find that the restraint involved is sufficiently related to commerce that Congress had jurisdiction to act. Un-

der this approach the elements of restraint and interstate commerce may be satisfied separately. The second approach requires that the court consider the nexus between the restraint and interstate commerce, and make the additional finding that the restraint involved is a restraint on interstate commerce. Under the second approach a restraint which was purely local in nature and which only locally affected a business with out-of-state activities, would not meet the jurisdictional requirements of the Sherman Act. The court refrained from deciding whether it would adopt the first or second approach, and held that there was sufficient evidence in that case to support a finding of jurisdiction under either approach. 509 F.2d at 1260–61.

Mich.1973),[8] *Elizabeth Hospital, Inc. v. Richardson,* 269 F.2d 167, 170–71 (8th Cir. 1959), *Riggall v. Washington County Medical Society,* 249 F.2d 266, 268 (8th Cir. 1957), and *Spears Free Clinic and Hospital v. Cleere,* 197 F.2d 125, 126 (10th Cir. 1952), are cases in which the courts held that the rendering of medical services by a single hospital or a single physician, in a single state, was essentially local in character, despite the fact that some patients came from outside the state for treatment. *Cf., Hospital Building Co. v. Trustees of Rex Hospital, supra,* at 682. Similarly, in *Goldfarb v. Virginia State Bar,* 497 F.2d 1, 18 (4th Cir.), *cert. granted,* 419 U.S. 963 (1974), the court found that the practice of law is generally a local service which may, on occasion, only incidentally be utilized by out-of-state residents. In this case, however, neither plaintiffs' activities, nor defendants' alleged restraints are confined to one state. Additionally, not only is there substantial interstate travel by USDI students and faculty, but also there is considerable shipment of orthodontic supplies. Moreover, as a legal matter, the hospital line of cases mentioned above has recently been called into question. In *Doctors, Inc. v. Blue Cross of Greater Philadelphia, supra,* 490 F.2d at 52, the court found the reasoning in those cases, which stemmed from *Spears Free Clinic and Hospital v. Cleere, supra,* to be defective in two major respects:

"First, the [*Spears*] opinion even when it was written placed primary reliance on a series of cases that were no longer valid. . . .

". . . [S]econd . . . the *Spears* case is . . . not in accord with the major relevant decisions which have been handed down since it was written. [*Burke v. Ford,* 389 U.

S. 320 [88 S.Ct. 443, 19 L.Ed.2d 554] (1967) (per curiam); *United States v. Employing Plasterers Association,* 347 U.S. 186 [74 S.Ct. 452, 98 L.Ed. 618] (1954).]"

In each of the cases of *Sun Valley Disposal Co. v. Silver State Disposal Co.,* 420 F.2d 341, 343 (9th Cir. 1969), *Lieberthal v. North Country Lanes, Inc.,* 332 F.2d 269, 271–72 (2d Cir. 1964), *Page v. Work,* 290 F.2d 323, 330 (9th Cir. 1961), and *John Kalin Funeral Home, Inc. v. Fultz,* 313 F.Supp. 435, 438–39 (W.D.Wash.1970), *aff'd,* 442 F.2d 1342 (9th Cir. 1971) (per curiam), all relied upon by defendants, there was a specific finding that the business involved was totally local in character and did not extend beyond the boundaries of one state. In fact, in the latter two cases, the business activity was confined to a single county within a state. Those cases held that the purchase of out-of-state supplies for an otherwise purely local business will not, without anything more, support Sherman Act jurisdiction. In this case, as previously noted, the activities of plaintiffs and defendants were on a multi-state scale. "No matter how intrastate the objects of anticompetitive conspirators [might be], they must take their victims' involvement in interstate commerce as they find them." *Lehrman v. Gulf Oil Corporation,* 464 F.2d 26, 36 (5th Cir.), *cert. denied,* 409 U.S. 1077, 93 S.Ct. 687, 34 L.Ed.2d 665 (1972). Moreover, the purchase of out-of-state orthodontic supplies was not merely incidental to plaintiffs' business; plaintiffs allege that the likely impact on the interstate flow of such goods is sufficiently substantial to confer jurisdiction in this case.[9] *See Doctors, Inc. v. Blue Cross of Greater Philadelphia, supra,* at 53; and *St. Bernard General Hospital, Inc. v. Hospital Service Association of New Orleans, Inc.,* 510 F.2d

---

8. In *Nankin Hospital v. Michigan Hospital Service,* as well as in *Kallen v. Nexus Corporation, supra,* and *Michigan Bar Review Center, Inc. v. Nexus Corp., supra,* the court applied the second jurisdictional approach mentioned in note 7, *supra,* requiring that

the complained of restraint affect a business' interstate commerce. *See Page v. Work,* 290 F.2d 323 (9th Cir. 1961).

9. See note 6, *supra.*

1121 (5th Cir. 1975). *Cf. Wolf v. Jane Phillips Episcopal-Memorial Medical Center*, 513 F.2d 684 (10th Cir. 1975).

Accordingly, defendants' motions to dismiss Counts I and III for lack of subject matter jurisdiction are hereby denied.

*Failure to State a Claim*

■ Defendants have further moved to dismiss Counts I and III for failure to state a claim upon which relief can be granted, pursuant to F.R.Civ.P. 12(b)(6).[10] Defendants claim that Sections 1 and 2 of the Sherman Act proscribe a restraint or monopolization only of "trade or commerce", and that the practice of dentistry and orthodontia falls outside the ambit of trade or commerce because it is a so-called "learned profession" governed by self-regulation. That term originated in dicta of Mr. Justice Story in *The Schooner Nymph*, 1 Summ. 516, 517–518; 18 Fed.Cas. 506, No. 10,388 (1834):

> "Wherever any occupation, employment, or business is carried on for the purpose of profit, or gain, or a livelihood, not in the liberal arts or in the learned professions, it is constantly called a *trade*." [As quoted in *Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 436, 52 S.Ct. 607, 610, 76 L.Ed. 1204 (1932).]

The Supreme Court, however, has never expressly held that a learned profession is not subject to the proscription of the Sherman Act, preferring instead to refrain from "intimat[ing] an opinion on the correctness of the application of the term [trade] to the professions." *United States v. Real Estate Boards*, 339 U. S. 485, 492, 70 S.Ct. 711, 715, 94 L.Ed. 1007 (1950); *American Medical Association v. United States*, 317 U.S. 519, 528, 63 S.Ct. 326, 87 L.Ed. 434 (1943).[11] The Fourth Circuit has been the only circuit specifically to recognize a learned profession exemption in *Goldfarb v. Virginia State Bar, supra*, at 13. Another circuit, however, reached the opposite result in *United States v. American Medical Association*, 110 F.2d 703, 711 (D.C.Cir.), *cert. denied*, 310 U.S. 644, 60 S.Ct. 1096, 84 L.Ed. 1411 (1940). In that case, cited by the Supreme Court in *United States v. Real Estate Boards*, at 491–92, the Court held that the antitrust statute is not confined in its application "to the field of commercial activity ordinarily defined as 'trade', but embraces as well the field of the medical profession." In a recent case, *United States v. Oregon State Bar*, 385 F.Supp. 507, 516 (D.Ore.1974), the court similarly refused to create by judicial fiat a learned profession exemption to the Sherman Act. In a well reasoned opinion, Judge Smith, in *United States v. National Society of Professional Engineers*, 389 F.Supp. 1193 (D.D.C.1974), *appeal filed*, 43 U.S.L.W. 3439 (U.S. Jan. 16, 1975) (No. 74–872), stated at 1198:

> "The concept of a learned profession exception to the antitrust laws is

---

10. On this basis, ADA and individual ADA defendants moved to dismiss Counts I and III, while AAO and individual AAO defendants move to dismiss Count III only.

11. Defendants' contention that the Supreme Court has expressly recognized a learned profession exemption to the Sherman Act is erroneous. Two of the cases cited, *Federal Trade Commission v. Raladam Co.*, 283 U.S. 643, 653, 51 S.Ct. 587, 75 L.Ed. 1324 (1931), and *Federal Baseball Club v. National League of Professional Baseball Clubs*, 259 U.S. 200, 209, 42 S.Ct. 465, 66 L.Ed. 898 (1922), contain mere dicta on the existence of such an exemption. *See Goldfarb v. Virginia State Bar, supra*, at 23–24 (Craven, J., dissenting); and *United States v. National Society of Professional Engineers*, 389 F. Supp. 1193, 1197–98 n. 2 (D.D.C.1974), *appeal filed*, 43 U.S.L.W. 3439 (U.S. Jan. 16, 1975) (No. 74–872). In the third, *United States v. Oregon State Medical Society*, 343 U.S. 326, 72 S.Ct. 690, 96 L.Ed. 978 (1952), *aff'g* 95 F.Supp. 103 (D.Ore.1950), the Supreme Court specifically declined to decide whether plaintiffs had stated a claim under the antitrust laws and explicitly held: "Affirmance [of the district court's dismissal of the complaint] is, of course, without prejudice to future suit if practices [of defendant medical societies] shall threaten or constitute violation of the antitrust laws." 343 U.S. at 339–40, 72 S.Ct. at 699.

of dubious validity in view of the repeated reluctance of federal courts to recognize it as a legitimate exception to the Sherman Act. The issue of whether a profession is a learned one is not seen by the Court as the appropriate approach for resolving the higher question of whether the Sherman Act is applicable to that profession. To engage in such an inquiry would chart the Court on a semantic adventure of questionable value. It would be a dangerous form of elitism, indeed, to dole out exemptions to our antitrust laws merely on the basis of the educational level needed to practice a given profession, or for that matter, the impact which the profession had on society's health and welfare. Clearly, the more appropriate and fairer course is to examine the nature and conduct involved in the profession on a case by case basis together with the context in which it is practiced."

Under this scheme the inquiry turns "on the character of the restraint and the activity restrained as opposed to a litmus test based on professionality." *Id.*[12]

This brings us, then to consider the character of the restraint and the activity restrained in this case. The complaint in essence charges the defendants with a group boycott of USDI, a for-profit school which was established to provide post-secondary education in orthodontia to licensed general practitioner dentists who are licensed to perform orthodontia services for their patients and who voluntarily sought additional training and education in orthodontia techniques. It is alleged that the purpose of this boycott was to enable the defendants to monopolize the orthodontic specialty, and that it was to be effec-

tuated by the following steps: (1) defendants acted to prevent USDI from receiving approval from the State of Illinois to operate as a post-secondary educational facility; when such certification was awarded to USDI, defendants sought to have the Illinois Superintendent of Public Instruction revoke such approval; (2) defendants refused to publish USDI advertisements seeking qualified faculty, as well as listings of USDI courses in the Journal of the ADA; (3) defendants issued certain "Guidelines for Continuing Dental Education" which sought to eliminate USDI and any other for-profit group as a source of continuing dental education, by withholding ADA accreditation; (4) defendants issued advisory ethics opinions in which they declared it to be unethical for a dentist to sponsor, conduct or participate as a teacher in a non-ADA approved program, for the purpose of discouraging potential faculty members; (5) defendants adopted restrictive standards on general practitioner dentists effectively preventing them from performing orthodontia services, while at the same time restricting their opportunities for further training in orthodontia techniques.

Defendants contend that they were motivated only by a sense of duty to protect general practitioner dentists from substandard education and to protect the public from treatment by less than qualified practitioners. Defendants maintain that their actions were taken for the sole purpose of maintaining professional standards and insuring competency in individual practitioners. If that were all defendants did in this case, their activities would not be the proper subject of an antitrust lawsuit. Defendants allegedly did not limit them-

---

12. This approach does not contradict even *Goldfarb v. Virginia State Bar, supra,* since the court in that case very carefully established a "limited immunity" under the learned profession exemption:

"The exemption is not a personal immunity from prosecution, but is rather a recognition that the Sherman Act prohibits only

those restraints which are upon trade or commerce. The occupation of one who violates the Sherman Act is irrelevant." 497 F.2d at 15.

My disagreement with *Goldfarb* then, goes to the narrow extent to which that court actually did limit the immunity.

selves, however, to exercising their First Amendment rights to criticize the activities of USDI.[13] Defendants also are charged with taking active steps to prevent general practitioner dentists, who are licensed to perform orthodontia services, from securing training in orthodontic techniques from a non-approved source. Moreover, defendants themselves are the arbiters of the so-called "approved" facilities. As the complaint alleges, the educational opportunities for training in orthodontia available to the general practitioner dentist have been limited by defendants to the full-time two-year accredited program for a specialty in orthodontia. But plaintiff dentists do not seek to be certified orthodontists; they seek only to enhance and enlarge their current practice by acquiring certain orthodontic skills and techniques to better serve their patients within the limits of their licenses to practice general dentistry. It is charged that defendants have sought to prevent these dentists from obtaining such part-time education as USDI provides, not only by the non-accreditation technique, but also by acting to eliminate USDI's supply of faculty instructors. Plaintiffs raise the question that if defendants' concern were merely to maintain professional standards, why should they seek to intimidate competent teachers from joining the USDI faculty?

If plaintiffs' allegations are to be accepted for the purpose of the motions to dismiss, defendants' actions, in practice, would appear to lower the level of competence in the teaching and practice of orthodontic techniques. The actions seek to prevent dentists from acquiring the skills necessary to competently service their patients to the full extent of their legal authorization to practice. Even though the professional regulations are not so limited, it is charged that the practice of orthodontia has effectively been restricted to fully certified orthodontist specialists, as a result of defendants' actions. The conse-

quences of this, plaintiffs allege, have been to protect the orthodontists' monopolistic position which enables them to charge higher rates for their services to the public than the market would otherwise bear. Defendants' actions thus operate on the business and commercial aspects of the dental practice by preserving the orthodontists' special commercial interests.

Accordingly, I find that the character of the restraint and the activity allegedly restrained in this case is of a type which should not be exempted from the provisions of the Sherman Act. Therefore, defendants' motions to dismiss Counts I and III for failure to state a claim are hereby denied.

*Motions to Strike*

Defendants have moved this court to strike from the complaint the allegations contained in paragraphs 20(a) and 21(a)(iii) of Count I, and to the extent they are incorporated in Count III through paragraph 45, on the ground that they do not state a claim under Sections 1 and 2 of the Sherman Act. In essence those portions of the complaint charge that defendants sought to prevent USDI from receiving certification from the State of Illinois to operate as a private post-secondary educational facility in the field of orthodontia, and further, that once such certification was obtained, defendants pursued administrative procedures before the Illinois Superintendent of Public Instruction to secure its revocation. Defendants rely on the "Noerr-Pennington Doctrine" in asserting that joint efforts to influence governmental actions do not constitute antitrust violations even if motivated by anti-competitive desires.

The "Noerr-Pennington Doctrine" derives its name from *Eastern Railroad Conference v. Noerr Motor Freight,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), and *United Mineworkers of America v. Pennington,* 381 U.S. 657, 669–671, 85 S.Ct. 1585, 14 L.Ed.2d 626

---

13. Such criticism forms the basis of the pendent claim of libel in Count II.

(1965). In *Noerr,* a group of trucking companies sued a group of railroads for violation of the antitrust laws. The Supreme Court held that mere attempts to influence the legislative branch for the passage of laws, or the executive branch for their enforcement, did not state a claim under the Sherman Act. That view was followed in *Pennington,* where the court stated, "Joint efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition." 381 U.S. at 670, 85 S.Ct. 1585. In a later case, the court noted that the philosophy of *Noerr* and *Pennington* also "governs the approach of citizens or groups of them to administrative agencies (which are both creatures of the legislature, and arms of the executive)." *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 510, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). In that case, defendants were charged with conspiring to defeat plaintiffs' applications for certification to operate as highway carriers in the State of California, and to seek rehearings and reviews or appeals from decisions of the state agencies granting such certification. The court held that such activities stated a cause of action under the antitrust laws. While the court recognized the importance of the *Noerr-Pennington* rule, it noted the existence of the so-called "sham" exception:

> "We said . . . in *Noerr* that there may be instances where the alleged conspiracy 'is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor and the application of the Sherman Act would be justified.' 365 U.S., at 144. [81 S.Ct. 523, at 533]" 404 U.S. at 511, 92 S.Ct. at 612.

In this case, the complaint alleges, in paragraph 19, that the aim and purpose of the conspiracy against USDI was:

"a) to discredit, disrupt and effectively terminate the operation of USDI as a source of continuing education for general practitioner dentists in the field of orthodontia;

b) to limit and prevent general practitioner dentists from securing adequate and reasonable post-secondary educational training necessary to enable them to perform basic orthodontic services;

c) to restrict the number of individuals practicing orthodontia to alleged specialists in that field in order to limit the number of orthodontists and thus protect their monopolistic position and their higher rates of charges to the detriment and injury of the public."

Moreover, in paragraph 21(a)(iii), which defendants seek to strike, plaintiffs allege that defendants' campaign against USDI was a form of "public and legal harassment".[14]

Defendants assert that the allegations in this complaint are not actionable within the "sham" exception. Their reliance on *Semke v. Enid Automobile Dealers Association,* 456 F.2d 1361 (10th Cir. 1972), and *Metro Cable Co. v. CATV of Rockford, Inc.,* 375 F.Supp. 350 (N.D.Ill.1974), however, is misplaced. In *Semke,* the court based its decision upon the proof established before a jury, and concluded that on the record below there was no showing that defendants' conduct fell within the "sham" exception. As the Supreme Court noted in *California Transport, su-*

14. Paragraph 48 further alleges that, in part, the aim and purpose of the conspiracy against the general practitioner dentists were:
"a) to discredit, disrupt, and terminate the operation of USDI as an institution which could otherwise instruct general practitioner dentists in orthodontia.

b) to obstruct, harass and interfere with lectures, seminars, meetings, and other programs intended to facilitate the communication of information among general practitioner dentists for the purpose of advancing their continuing education in orthodontia."

*pra,* in remanding the case for trial, "What the proof will show is not known, for the District Court granted the motion to dismiss the complaint. We must, of course, take the allegations of the complaint at face value for the purposes of that motion." 404 U.S. at 515, 92 S. Ct. at 614.[15] In *Metro Cable,* the proceedings involved were those of the City Council, a legislative rather than an adjudicatory body, engaged in making a policy decision. On that basis, the court concluded that defendants "did not and *could not,* by the very legislative nature of the City Council, institute any 'sham' proceedings . . ." 375 F.Supp. at 358 (emphasis supplied). In this case, of course, we are dealing with an adjudicatory proceeding of an administrative nature.

While plaintiffs' allegations have not specifically charged that defendants' actions in the state administrative proceedings amounted to a "sham", they have implicitly alleged defendants' bad faith and plaintiffs should be given the opportunity to prove such charges at trial. In reaching this conclusion, I believe it is appropriate to adopt the language of Justice Stewart in his concurring opinion in *California Transport, supra,* 404 U.S. at 518, 92 S.Ct. at 615:

> "Under these allegations, liberally construed, the respondents are entitled to prove that the real *intent* of the conspirators was not to invoke the processes of the administrative agencies and courts, but to discourage and ultimately to prevent the respondents from invoking those processes. Such an intent would make the conspiracy 'an attempt to interfere directly with the business relationships of a competitor and the application of the Sherman Act would be justified.' *Eastern Railroad Presidents Confer-*

*ence v. Noerr Motor Freight,* 365 U. S., at 144 [81 S.Ct. 523, at 533]."

Pursuant to F.R.Civ.P. 12(f), defendant AAO and the AAO individual defendants have further moved to strike from the complaint: all of paragraph 15 except the first sentence; all of paragraphs 16 and 17; the following words of the first sentence of paragraph 19:

> ". . . and to unreasonably restrain the business of continuing education for general practitioner dentists in the field of orthodontia . . .";

and subparagraphs b) and c) of paragraphs 19 and 21. These defendants contend that such allegations are immaterial to Count I because they do not allege any restraint upon or injury suffered by USDI, but only allege a restraint on general practitioner dentists, and that USDI is the only plaintiff requesting relief in Count I.[16]

Generally, motions to strike allegedly immaterial matter are not favored. Such motions will not be granted unless the allegations are so immaterial that they can have no possible bearing on the issues at trial and unless their presence in the complaint prejudices defendants, especially in complex cases. *Johnson v. American Aviation Corporation,* 64 F.R.D. 435, 440 (D.N.D.1974); *Kinee v. Abraham Lincoln Federal Savings & Loan,* 365 F.Supp. 975, 982 (E. D.Pa.1973); *Gilbert v. Eli Lilly & Co., Inc.,* 56 F.R.D. 116, 120–21 (D.P.R. 1972); *Federated Department Stores, Inc. v. Grinnell Corporation,* 287 F.Supp. 744, 747 (S.D.N.Y.1968); 2A Moore's Federal Practice ¶ 12.21[2], at 2429, 2431 (2d ed. 1973).

These allegations may be relevant at trial to two aspects of plaintiffs' case. First, plaintiffs will seek to show

---

15. That same approach was followed by the D.C. Circuit in *Israel v. Baxter Laboratories, Inc.,* 151 U.S.App.D.C. 101, 466 F.2d 272, 279 (1972).

16. Defendants further argue that the substance of these allegations is to allege a re-

straint upon general practitioner dentists which is not actionable because of the "learned profession" exemption to the Sherman Act. Because this court has already ruled on this point, there is no need to further consider that contention in this context.

defendants' motive and intent in participating in the alleged conspiracy. *United States v. Columbia Steel Co.*, 334 U.S. 495, 522, 68 S.Ct. 1107, 92 L.Ed. 1533 (1948). Second, as part of their burden of proving an unreasonable restraint of trade, plaintiffs must show the impact of the challenged practices upon the market-place. *United States v. Arnold, Schwinn & Co.*, 388 U.S. 365, 374, 87 S. Ct. 1856, 18 L.Ed.2d 1249 (1967). As to the issue of prejudice, since Count III of the complaint separately charges a restraint on general practitioner dentists, it is difficult to imagine how the inclusion of such allegations in Count I will prejudice defendants in their defense.

Accordingly, defendants' motions to strike portions of the complaint are hereby denied.