## CAPITOL INDEMNITY CORPORATION, Plaintiff,

### v.

## TRANEL DEVELOPMENTS, INC. d/b/a Moonlight Gardens and Tri State Bank of East Dubuque, Defendants.

### No. 92 C 20234.

United States District Court, N.D. Illinois, W.D.

Nov. 4, 1992.

Richard D. Heytow, Crystal, Heytow and Warnick, P.C., Chicago, Ill., for plaintiff.

Scott C. Sullivan, Williams & McCarthy, Rockford, Ill. and Les V. Reddick, O'Connor & Thomas, P.C., Dubuque, Iowa, for defendants.

### ORDER

REINHARD, District Judge.

### INTRODUCTION

Before this court is plaintiff/counter-defendant's, Capitol Indemnity Corporation, motion to strike pursuant to Federal Rules of Civil Procedure 12(f).[1] Plaintiff wishes

---

1. Rule 12(f) provides:
   **Motion to Strike.** Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.
   FED.R.CIV.P. 12(f).

to strike ¶ 9 of defendant/counter-plaintiff's, Tranel Developments, Inc., counterclaim and exhibit B attached to the counterclaim.

Exhibit B of defendant's counterclaim is an unsigned letter, dated June 23, 1992, from plaintiff's attorney to defendant. Plaintiff argues that because the letter is unsigned and its mailing was unauthorized by plaintiff, the letter reflects the work product and mental impressions of its attorney and does not represent plaintiff's handling of defendant's claim. As such, plaintiff argues, the letter is "immaterial" to the law suit and should be stricken.[2]

## DISCUSSION

Rule 12(f) of the Federal Rules of Civil Procedure allows for a party to strike portions of pleading that are redundant, immaterial, impertinent, scandalous or constitute an insufficient defense. FED.R.CIV.P. 12(f). In the present case, plaintiff maintains that since the June 23, 1992, letter was unsigned and inadvertently sent to defendant, the letter was privileged work product of its attorney, not reflective of plaintiff's position. Plaintiff argues that this renders the letter "immaterial." Defendant argues that because the June 23, 1992, letter dealt with issues concerning plaintiff's handling of the claim, the letter was "material" to the suit, and its reference should not be stricken.

Neither plaintiff nor defendant supports their argument with precedential case law. This court, through its own research, has been unable to find any case directly on point. Despite there being no precedential authority, it still remains the moving party's (plaintiff's) burden to demonstrate the grounds for striking certain pleadings.

■ Motions to strike allegedly redundant, immaterial, impertinent or scandalous matter are generally not favored. *See* 2A MOORE'S FEDERAL PRACTICE ¶ 12.21[2] (2d ed. 1992); *Seoud v. E.F. Hutton & Co., Inc.*, 720 F.Supp. 671, 686 (N.D.Ill.1989). Further, "Matter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation." 2A MOORE'S FEDERAL PRACTICE ¶ 12.21[2], at 12–175.

■ Plaintiff's grounds for striking rest solely on the "immaterial" provision in Rule 12(f). "Immateriality" is adequate grounds for striking pleadings that do not have "much value in developing the issues of the case." 2A MOORE'S FEDERAL PRACTICE ¶ 12.21[2], at 12–167; *see also United States Dental Instit. v. American Ass'n of Orthodontists*, 396 F.Supp. 565, 583 (N.D.Ill.1975) (hereinafter *U.S. Dental*) ("Generally, motions to strike allegedly immaterial matter are not favored. Such motions will not be granted unless the allegations are so immaterial that they can have no possible bearing on the issues at trial …").

■ Furthermore, pleadings will not be stricken unless the moving party is prejudiced. *U.S. Dental*, 396 F.Supp. at 583; 2A MOORE'S FEDERAL PRACTICE ¶ 12.21[2], at 12–176 ("Even if the allegations are redundant or immaterial, they need not be stricken if their presence in the pleading cannot prejudice the adverse party.")

■ The confusion in this case centers not around whether the June 23, 1992, letter is material to defendant's counterclaim, for certainly the substance of the letter is "material" to the issues.[3] Plaintiff's argument, however, is that since the letter was

---

**2.** This action arises out of an original action by plaintiff, seeking a declaratory judgment as to its obligations under an insurance policy issued to defendant. Defendant countersued plaintiff for improper claims practices under ILL.REV.STAT. ch. 73, ¶ 766.6 (1991) and for common law bad faith claims handling. The motion to strike involves Exhibit B attached to defendant's counterclaim and allegations in the counterclaim based thereon.

**3.** Defendant's counterclaim against plaintiff is for bad faith claims handling and unreasonable and vexatious delay in settling the claim. The June 23, 1992 letter from plaintiff to defendant stated why plaintiff was denying liability under its policy for defendant's claim. Included in the letter were the grounds for plaintiff's denial, namely that defendant lacked an insurable interest in the property. As such, this court finds that the substance of the letter was material to the issues in defendant's counterclaim.

unsigned and not intended for sending, the document is "immaterial" because it in no way reflected plaintiff's position with respect to the suit. Rather, plaintiff suggests, the letter was an initial draft of a letter that was later signed and sent to defendant on June 25, 1992.[4]

Thus, the issue this court is confronted with is whether a preliminary draft of a letter that is inadvertently sent, unsigned, to an opposing party may be later stricken as "immaterial" to the law suit by the erring party. As mentioned, there is no doubt that the substance of the June 23, 1992, letter (first letter) was material to the pleadings. However, certain extrinsic evidence supports plaintiff's contention that this first letter was merely a draft in preparation for the second letter, dated June 25, 1992.

First, the letter signed and sent to defendant (second letter) is word for word the same as the first letter sent to defendant, save one paragraph.[5] Second, the letters are only two days apart and are from the same attorney. These factors do suggest that the first letter was a preliminary draft of the final version that was signed and mailed on June 25, 1992.

However, even assuming that the first letter was only a draft of the final version sent on June 25, this finding would not necessarily preclude the first letter from being material to the lawsuit. The unsigned letter, inadvertently sent, is arguably material to the lawsuit at this stage of the proceedings. Plaintiff has not met its burden in showing that the letter has no value in determining the issues of the case. Nor has plaintiff shown any prejudice by the references to the letter made in the pleadings. Moreover, plaintiff erred in sending out the letter in the first place. The burden of the mistake in this case must be borne by the erring party. Accordingly, the June 23, 1992, letter and all references thereto are material to this lawsuit and will not be stricken.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to strike is denied.

---

**4.** This second letter was attached to defendant's counterclaim as exhibit C.

**5.** The two letters differ only with respect to the second paragraph. The second paragraph of the first letter reads:

> The policy of insurance captioned above, however, names the Tri State Bank of East Dubuque as a mortgagee. Because the mortgage provisions of the policy create a separate and distinct contract between Capital Indemnity Corporation and the mortgagee, and because the mortgagee does, in fact, have an insurable interest in the real estate at the insured location, the Capital Indemnity Corporation intends to honor any claim submitted pursuant to policy provisions by the Tri State Bank of East Dubuque. Pursuant to policy provisions, if the Capital Indemnity Corporation makes payment to the Tri–State Bank of East Dubuque, the insurer will re-

ceive an assignment of the mortgagees rights pursuant to the mortgage.

This paragraph is replaced with the following language in the second letter:

> With respect to your claim for loss of business personal property, Tranel Development, Inc. is required to demonstrate its insurable interest in order to be entitled to indemnification. If there are any documents which demonstrate the corporation's insurable interest in the Business personal property please submit it to this office within 30 days of your receipt of this letter. If no such documents are received within that time we will assume that no such documents exists [sic] and you may consider this letter as a denial of that portion of your claim as well.

In all other respects the language of the two letters is identical.